[Nos. D032128, D032824. Fourth Dist., Div. One. Jan. 9, 2001.]

PETER DOWLING, Plaintiff and Appellant, v.
CONNIE ZIMMERMAN, Defendant and Respondent.

COUNSEL

Kevin C. Young and John W. Kopp, Jr., for Plaintiff and Appellant.

Law Offices of James J. Moneer and James J. Moneer for Defendant and Respondent.

OPINION

NARES, J.—Code of Civil Procedure[1] section 425.16 is California's anti-SLAPP suit (strategic lawsuits against public participation) statute (hereafter referred to as section 425.16 or the anti-SLAPP statute).[2] The anti-SLAPP statute was specifically enacted to provide both a summary disposition and attorney fees and costs to defendants in such actions.[3]

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise specified.

[2] *Liu v. Moore* (1999) 69 Cal.App.4th 745, 747 [81 Cal.Rptr.2d 807]. Section 425.16 provides in part: "(a) The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. To this end, this section shall be construed broadly. [¶] (b)(1) A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim. [¶] (2) In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based. [¶] . . . [¶] (c) In any action subject to subdivision (b), a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs. If the court finds that a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5. [¶] . . . [¶] (e) As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: (1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

[3] *Liu v. Moore, supra,* 69 Cal.App.4th at page 747, footnote 1.

Plaintiff and appellant Peter Dowling (Dowling) appeals from a judgment dismissing his complaint against defendant and respondent Connie Zimmerman (Zimmerman) under the provisions of section 425.16, and awarding her, under subdivision (c)[4] of that section, reasonable attorney fees in the amount of $9,300 and costs in the amount of $580. We hold that in order to effectuate the purpose of the anti-SLAPP statute and the Legislature's intent to deter SLAPP suits, a defendant who appears in a SLAPP action in propria persona and later retains specially appearing counsel who successfully brings on behalf of the defendant a special motion to strike the complaint under section 425.16 is entitled to recover an award of reasonable attorney fees under the mandatory provisions of subdivision (c) of that section in order to compensate the retained counsel for the legal services provided in connection with both the special motion to strike, and the recovery of attorney fees and costs under that subdivision. Because we also conclude the court in the instant case properly granted Zimmerman's special motion to strike the complaint under the anti-SLAPP statute, and its modest award of fees in her favor under subdivision (c) of that statute is not excessive in amount,[5] we affirm the judgment.

In his separate petition, Dowling seeks a writ of supersedeas barring Zimmerman from attempting to enforce the portion of the judgment awarding her attorney fees and costs under the anti-SLAPP statute pending disposition of his appeal in this matter.[6] Dowling appealed from the judgment without filing an appeal bond or other undertaking. When Zimmerman attempted to enforce the judgment by serving Dowling with a subpoena duces tecum and an order to appear at a judgment debtor's examination, Dowling unsuccessfully moved to quash the subpoena and vacate the debtor's examination, contending that enforcement of the judgment was automatically stayed under section 917.1, subdivision (d), by the perfecting of his appeal. Dowling challenged the court's ruling by filing the instant writ petition. We granted a de facto stay of execution of the judgment by requesting Zimmerman to answer the petition and brief the legal issues presented therein, and by thereafter deferring a ruling on the petition until disposition of the appeal.

The petition presents a question of first impression: Whether a prevailing SLAPP defendant's enforcement of a judgment awarding attorney fees and

---

[4]See footnote 2, *ante.*

[5]Zimmerman filed a separate appeal in this matter, claiming the court's award of attorney fees was inadequate and constituted an abuse of discretion. Although Zimmerman's claim appeared to be meritorious, we note that she has abandoned her appeal.

[6]"Supersedeas is the appropriate remedy when it appears that a party is refusing to acknowledge the applicability of statutory provisions 'automatically' staying a judgment while an appeal is being pursued. [Citation.]" (*Nielsen v. Stumbos* (1990) 226 Cal.App.3d 301, 303 [276 Cal.Rptr. 272].)

costs under subdivision (c) of section 425.16 is automatically stayed by the SLAPP plaintiff's perfecting of an appeal from that judgment. We hold that a SLAPP plaintiff's perfecting of an appeal from a judgment awarding attorney fees and costs to a prevailing SLAPP defendant under subdivision (c) of section 425.16 does not automatically stay enforcement of the judgment. We further hold that to stay enforcement of such a judgment, the SLAPP plaintiff must give an appropriate appeal bond or undertaking under the money judgment exception to the automatic stay rule.

The petition for writ of supersedeas and the appeal have been consolidated for disposition.

### FACTUAL AND PROCEDURAL BACKGROUND

Appellant Dowling and his wife[7] (together the Dowlings) owned a townhouse in the Penasquitos Townhouse complex in the City of San Diego. Respondent Zimmerman is an attorney. Edward White and his wife Grace White (together the Whites) lived in the Dowlings' townhouse. Harvey Pollack (Pollack) was the property manager of the Penasquitos Townhouse Owners Association (PTOA). In January 1995, the Dowlings and the Whites entered into an agreement under which the Whites leased the townhouse with intent to purchase it.

### A. The Underlying Unlawful Detainer and Harassment Litigation

In July 1996, after a dispute arose between the Dowlings and the Whites involving the Whites' payment obligations and title to and possession of the subject townhouse, the Dowlings commenced the first of three unsuccessful unlawful detainer actions against the Whites in a four-month period (July-October). The Dowlings were represented by counsel (John W. Kopp, Jr. (Kopp)) in all three actions. The Whites represented themselves in the first two actions. The Dowlings voluntarily dismissed the first action without prejudice.

The Dowlings' second unlawful detainer action against the Whites proceeded to trial. The court found the statutory three-day notice was defective and entered a judgment of dismissal in favor of the Whites.

On October 9, 1996, before the Dowlings filed their third unlawful detainer action, Edward White petitioned for and obtained a restraining order prohibiting Dowling from harassing the Whites for a period of one year.

---

[7]Dowling's wife, Mary Dowling, is not a party to the instant case.

On October 23, 1996, the Dowlings filed their third unlawful detainer action against the Whites.[8] Shortly thereafter, Zimmerman agreed to represent the Whites in that action[9] on a pro bono basis. When the Whites reported to her that Dowling was continuing to harass them, Zimmerman sent several letters to Dowling's attorney, Kopp, between October 31 and November 14 in an effort to investigate the matter and stop the claimed harassment pending the outcome of the unlawful detainer proceeding.

1. *The November 15 letter*

Eventually, the Whites asked Zimmerman to petition the PTOA board of directors through the PTOA's property manager, Pollack, to investigate the Whites' claims regarding certain disturbances in the neighborhood, and to assist them in stopping the claimed harassment by Dowling so that the Whites could have the quiet use and enjoyment of the townhouse in the PTOA complex.

In her capacity as the Whites' attorney and based on information they provided to her, Zimmerman on November 15, 1996, sent a four-page letter (hereafter referred to as the letter or the November 15 letter) to Pollack, the PTOA's property manager. The Whites had informed Zimmerman that Pollack, as the property manager, was the appropriate person to whom PTOA homeowner complaints should be directed regarding safety concerns, ingress and egress problems, and nuisances in the complex. Based on information provided by the Whites, Zimmerman sent the letter to five other individuals she believed were members of the PTOA board of directors.

In the November 15 letter, Zimmerman identified herself as the Whites' attorney, and explained the purpose of the letter: "The purpose of this letter is to advise you of certain unusual and even dangerous conditions occurring on the . . . property and complex, and to give you the opportunity to correct and eliminate them. The situation interferes with the Whites'[] use and enjoyment of their property and may very well affect other residents' enjoyment. [¶] . . . [¶] This letter is notice to the PTOA, its board of directors, officers, and agents that the safety of your residents and owners may be at risk and we hope you will assist us in our efforts to create a more pleasant environment in the complex."

In the letter, Zimmerman provided information about the dispute between the Dowlings and the Whites, and then made reference to Dowling's harassment of the Whites: "In July 1996, Mr. Dowling began a concerted plan of harassment against the Whites and entered into a series of behaviors which

[8]*Dowling v. White* (Mun. Ct. San Diego County, 1996, No. 052961).
[9]Zimmerman formally substituted in as the Whites' attorney on December 4, 1996.

have now come to the attention of the San Diego Police Department. Mr. Dowling repeatedly tells residents that the Whites are tenants, refuse to pay rent, and refuse to move. This is untrue."

Zimmerman stated in the letter that the July 1996 unlawful detainer action filed by Dowling was dismissed based on evidence he had "rel[ied]" on a "forged document":[10] "In July 1996, Mr. Dowling filed an unlawful detainer action which his attorney dismissed once it was learned that *Mr. Dowling was relying on a forged document* to support his case. (*Someone forged Mr. White's name on a rental agreement.*) . . . In September 1996, Mr. Dowling lost the second unlawful detainer action against the Whites even though [or because] he offered the forged rental agreement as evidence." (Italics added.)

Zimmerman also listed various "unusual occurrences" (such as the phone company's disconnecting the Whites' telephone service and the utility company's scheduling of a disconnecting of service at the telephonic direction of an unnamed male, among others), and asserted that Dowling's "continuous threats against the Whites and his daily prowling around their condo creates fear and apprehension" in Grace White.

 2. *March 1997 stipulation for judgment in the third unlawful detainer action*

In March 1997, Dowling and the Whites entered into a stipulated judgment in favor of Dowling in the third unlawful detainer action. Zimmerman, acting as the Whites' counsel, negotiated the stipulated judgment on their behalf. The stipulation required the Whites to return possession of the townhouse to the Dowlings, but contained a provision that the parties reserved the right to recover damages through legal action at a later date.

B. *The Instant Litigation*

 1. *Dowling's SLAPP complaint*

In November 1997, Dowling filed his SLAPP complaint naming Zimmerman and Edward White[11] as the defendants, and alleging 11 causes of

---

[10]In their declarations supporting Zimmerman's special motion to strike Dowling's complaint under the anti-SLAPP statute, White and his wife stated that during the trial in the Dowlings' third unlawful detainer action against them, they observed Dowling admit (in the presence of the court, Zimmerman and Kopp) that he forged White's name on the purported lease agreement that was the basis for the Dowlings' second unlawful detainer action. In his opposition declaration, Dowling denied he made such admission, and further denied he forged any document.

[11]A default was entered against Edward White, who is not a party to this appeal.

action.[12] Of these, the following four were alleged against Zimmerman: *defamation* (fifth cause of action), *misrepresentation* (sixth cause of action), *intentional infliction of emotional distress* (tenth cause of action), and *negligent infliction of emotional distress* (eleventh cause of action).

Dowling's defamation cause of action was based only on the following allegation: "[Zimmerman] by [her] words and actions [has] impugned the reputation of Plaintiff[]. These words and actions have been false. [Zimmerman has] consistently published [her] false allegations to others on numerous occasions. [Zimmerman's] words have lowered the Plaintiff[']s reputation[] in the eyes of [his] business associates and tenants and thus adversely affected present and future businesses. Plaintiff[] [has] been damaged in an amount according to proof at trial."

Dowling's misrepresentation cause of action was based on allegations that Zimmerman knowingly made unspecified false "representations," and concealed unspecific "material facts," during unspecified "negotiations."

Last, Dowling's two emotional distress claims were both based on his allegation that Zimmerman "published a false letter" (presumably the November 15 letter, discussed *ante*).

Dowling served Zimmerman with the summons and complaint in March 1998. Acting in pro se, Zimmerman answered the complaint and alleged various affirmative defenses, including the defense that Dowling's complaint was barred by the litigation privilege (set forth in Civ. Code, § 47, subd. (b)[13]).

### 2. *Zimmerman's special motion to strike under section 425.16*

In May 1998, Zimmerman filed her timely special motion to strike Dowling's complaint against her under the anti-SLAPP statute (§ 425.16). Zimmerman argued that the complaint was a meritless SLAPP suit intended

---

[12]The 11 causes of actions alleged in the complaint are: fraud (first cause of action against Edward White only), breach of contract (second cause of action against Edward White only), nuisance (third cause of action against Edward White only), negligence (fourth cause of action against Edward White only), *defamation (fifth cause of action against Zimmerman only)*, *misrepresentation (sixth cause of action against Zimmerman* and Edward White), conversion (seventh cause of action against Edward White only), property damage (eighth cause of action against Edward White only), intentional interference with economic advantage (ninth cause of action against Edward White only), *intentional infliction of emotional distress (tenth cause of action against Zimmerman* and Edward White), and *negligent infliction of emotional distress (tenth cause of action against Zimmerman* and Edward White).

[13]Subdivision (b) of Civil Code section 47 provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (b) In any . . . (2) judicial proceeding."

to "intimidate and punish" her for assisting the Whites in exercising their lawful right to petition the courts and the PTOA on the public issue of residential safety and nuisances within the meaning of subdivision (e)(2) and (4) of section 425.16 (see fn. 2, *ante*). Zimmerman also argued that Dowling was unable to meet his burden under the anti-SLAPP statute of establishing a probability of prevailing on his claims because the complaint contained only legal conclusions; her statements in the November 15 letter were not provably false factual assertions, and thus were not defamatory; and those statements were privileged under the litigation privilege codified in subdivision (b) of Civil Code section 47 (see fn. 13, *ante*), the common interest privilege codified in subdivision (c) of Civil Code section 47,[14] and the First Amendment to the United States Constitution. In support of her motion, Zimmerman submitted her own declaration, the declarations of the Whites, and documentary evidence that included (among other things) the November 15 letter.

Dowling opposed the motion to strike, contending (among other things) that the anti-SLAPP statute did not apply because no public issue was involved in the case. He also contended that Zimmerman failed to make the requisite prima facie showing under the anti-SLAPP statute because the right to petition or exercise free speech, "if any," belonged to the Whites, not to Zimmerman; the November 15 letter involved a private dispute between the Whites and him; the anti-SLAPP statute did not apply to a defamation action; his papers showed a probability he would prevail in the action; and Zimmerman's statements in her November 15 letter were not privileged under Civil Code section 47. In support of his opposition, Dowling submitted his own declaration, the declaration of his attorney (Kopp), and a copy of Zimmerman's executed substitution of attorney form from the underlying unlawful detainer proceedings.

Zimmerman filed reply papers in which she challenged Dowling's evidence, and argued (among other things) that subdivision (e)(1) and (2) of section 425.16 contained no public issue requirement, and she published the November 15 letter in connection with the unlawful detainer proceedings and in good faith contemplation of renewing the restraining order previously granted to her clients, the Whites. She submitted her own supplemental declaration and that of Edward White. Dowling filed an unauthorized

---

[14]Subdivision (c) of Civil Code section 47 provides in part: "A privileged publication or broadcast is one made: [¶] . . . [¶] (c) *In a communication, without malice, to a person interested therein*, (1) *by one who is also interested*, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, *or* (3) *who is requested by the person interested to give the information*." (Italics added.)

response to Zimmerman's reply papers. Following oral argument on the motion, the court took the matter under submission.

### i. *Decision and judgment of dismissal*

In July 1998, the court issued its written decision granting Zimmerman's special motion to strike Dowling's complaint under the anti-SLAPP statute. The court determined that Zimmerman had met her initial burden on the motion by showing that the November 15 letter constituted "conduct in furtherance of the exercise of the constitutional right to free speech on matters of public concern and the constitutional right of petition under . . . section 425.16, subdivisions (e)(2) and (e)(4)."[15] The court explained that the letter addressed the public concerns of nuisance and safety (at the Penasquitos Townhouse complex); it was written in connection with the Dowlings' underlying unlawful detainer action against the Whites; and it was "directed to persons who held themselves out to be members of the board of directors of [Zimmerman's] client's homeowner's association." The court also explained that the letter made reference to conduct by Dowling that might constitute a nuisance or a safety hazard, and Zimmerman wrote it to advise the PTOA of the "potential nuisance and/or hazard." Giving the anti-SLAPP statute the broad construction expressly mandated in subdivision (a) of section 425.16 (see fn. 2, *ante* ["this section shall be construed broadly"]), and noting that the letter discussed the underlying unlawful detainer and harassment litigation, the court found that "the letter would not have been written but for the pending litigation."

The court also determined that Dowling had not met his statutory burden under section 425.16, subdivision (b) (see fn. 2, *ante*), of showing a probability of prevailing on the merits of his complaint. The court explained: "The complaint is pled without specificity and is without merit. While Zimmerman was not yet counsel of record at the time the letter was written, the facts disclose that she was [the Whites'] attorney when she wrote the letter. Moreover, the facts show that Zimmerman wrote the letter within the course and scope of her representation of [the Whites]. Zimmerman's letter was privileged under Civil Code section 47. Therefore, [Dowling] has not met his burden of showing a probability of prevailing."

---

[15]As discussed *ante* (see fn. 2), subdivision (e) of section 425.16 provides in part: "As used in this section, 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue' includes: . . . (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; . . . (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

### 3. *Judgment and Zimmerman's motion for attorney fees (§ 425.16, subd. (c))*

On August 18, 1998, noting it had granted Zimmerman's special motion to strike Dowling's SLAPP complaint under section 425.16, the court entered a judgment dismissing the complaint with prejudice. The judgment also awarded to Zimmerman reasonable attorney fees and costs under subdivision (c) of that statute in an amount to be determined.

Zimmerman thereafter brought a motion for recovery of reasonable attorney fees under the mandatory provisions of section 425.16, subdivision (c).[16] In her supporting declaration, Zimmerman stated she had retained an attorney, James J. Moneer (Moneer), for the "nominal" retainer fee of $1,300 to represent her in the instant case "as special counsel of record for the sole purpose of handling the [a]nti-SLAPP motion per [section] 425.16." She also stated that Moneer's fee was contingent on the result of her motion under subdivision (c) of the anti-SLAPP statute, and without the mandatory attorney fees provision of that subdivision she would not have been able to afford his services as an anti-SLAPP specialist. In his supporting and reply declarations, Moneer provided evidence of his experience and expertise, and of the services he had rendered to Zimmerman. He stated he had spent 176.5 hours of billable time on her behalf at the rate of $350 per hour, and the total amount of attorney fees requested in the motion was $61,862.50.

In September 1998, the court awarded Zimmerman, under subdivision (c) of section 425.16, the sum of $9,300 (62 hours at the rate of $150 per hour) as reasonable attorney fees for Moneer's legal services, plus costs incurred in furtherance of the special motion to strike in the amount of $580. The court amended the judgment to incorporate these attorney fees and cost awards.

### 4. *Dowling's appeal and Zimmerman's "cross-appeal"*

On October 5, 1998, Dowling filed his timely notice of appeal without posting an appeal bond. Zimmerman thereafter filed notice of her now-dismissed "cross-appeal" from the order on her motion for attorney fees.

### 5. *Dowling's motion to quash subpoena and vacate judgment debtor's exam*

Zimmerman attempted to enforce the judgment by serving Dowling with a subpoena duces tecum and an order to appear at a judgment debtor's examination that was eventually scheduled for February 11, 1999.

---

[16]See footnote 2, *ante.*

On January 8, 1999, Dowling challenged Zimmerman's attempted enforcement of the judgment by bringing a motion to quash the subpoena and vacate the debtor's examination order, contending that the perfecting of his appeal without the filing of an appeal bond or other undertaking automatically stayed enforcement of the judgment under section 917.1, subdivision (d).

On January 29, 1999, the court denied Dowling's motion. The court found that the award of attorney fees in favor of Zimmerman under section 425.16 was a judgment directing "payment of money" within the meaning of section 917.1, subdivision (a)(1), and thus the perfecting of Dowling's appeal did not automatically stay enforcement of the judgment. The court also found that an undertaking "consistent with the relevant statutes" was required to effect a stay pending the appeal.

### 6. *Dowling's petition for writ of supersedeas*

On February 9, 1999, Dowling challenged the court's ruling by filing his pending petition for writ of supersedeas (the petition), seeking a stay of enforcement of the judgment pending disposition of his appeal. In his petition, Dowling contends that the perfecting of his appeal automatically stayed enforcement of the judgment under the provisions of various statutes (discussed, *post*), and thus he was entitled to such stay without filing an appeal bond or other undertaking.

On February 10, 1999, this court issued an order (the February 10 stay order) staying the judgment debtor's examination (scheduled for the following day, February 11) pending Zimmerman's response to the petition and disposition of the matter, and until further order of this court.

On February 26, 1999, this court issued another order stating the February 10 previous stay order "shall remain in effect until further order," and further ordering that this court would "defer ruling on the [petition for] writ of supersedeas until disposition of the appeal."

Zimmerman thereafter filed a request for immediate disposition of the petition. On March 15, 1999, this court denied Zimmerman's request.

### DISCUSSION

### I. *Appeal*

In his appeal, Dowling contends the anti-SLAPP statute (§ 425.16) does not bar his tort action against Zimmerman, and thus the court erred by

granting Zimmerman's special motion to dismiss the action under this statute, because (1) her November 15 letter is not protected by subdivision (e)(4) of section 425.16 , the letter is outside the scope of section (e)(2) of that section, and the letter "is contrary to" the anti-SLAPP statute; and (2) he has established the requisite probability of prevailing in this action by showing that Zimmerman's conduct is not privileged. Alternatively, Dowling contends the court abused its discretion by awarding Zimmerman reasonable attorney fees under section 425.16, subdivision (c), because she elected to appear in pro se, a pro se litigant cannot recover attorney fees, and the fee award was excessive. We reject these contentions.

### A. Overview of Section 425.16

■ A SLAPP lawsuit is generally defined as a "meritless suit filed primarily to chill the defendant's exercise of First Amendment rights." (*Wilcox v. Superior Court* (1994) 27 Cal.App.4th 809, 815, fn. 2 [33 Cal.Rptr.2d 446] (*Wilcox*).) SLAPP suits "are brought, not to vindicate a legal right, but rather to interfere with the defendant's ability to pursue his or her interests. Characteristically, the SLAPP suit lacks merit; it will achieve its objective if it depletes defendant's resources or energy. The aim is not to win the lawsuit but to detract the defendant from his or her objective, which is adverse to the plaintiff. [Citation.]" (*Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 645 [49 Cal.Rptr.2d 620] (*Church of Scientology*).)

Section 425.16 was enacted in 1992 to deter and prevent SLAPP suits, and is "designed to protect citizens in the exercise of their First Amendment constitutional rights of free speech and petition." (*Church of Scientology, supra,* 42 Cal.App.4th at pp. 636, 644.) The anti-SLAPP statute "is California's response to the problems created by meritless lawsuits brought to harass those who have exercised these rights." (*Id.* at p. 644.) "California enacted section 425.16 to provide a procedural remedy to resolve such a suit *expeditiously.*" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 645, italics added.) The Legislature expressly set forth the intent and purpose underlying the anti-SLAPP statute in section 425.16, subdivision (a),[17] which "expressly states the Legislature's intent thereby 'broadly' to protect the right of petition [citation]." (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1121 [81 Cal.Rptr.2d 471, 969 P.2d 564] (*Briggs*), fn. omitted.)

"[T]he common features of SLAPP suits are their lack of merit and chilling of defendants' valid exercise of free speech and the right to petition

---

[17]See footnote 2, *ante.*

the government for a redress of grievances." (*Wilcox, supra,* 27 Cal.App.4th at p. 823.) "Section 425.16 was intended to address those features by providing a fast and inexpensive unmasking and dismissal of SLAPP's. [Citations.]" (*Ibid.*)

### 1. *Special motion to strike SLAPP suits*

Subdivision (b)(1) of section 425.16 authorizes a special motion to strike a SLAPP suit, and expressly makes subject to such a motion "[a] cause of action against a person *arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue* . . . , unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Italics added.)

Subdivision (e)[18] of section 425.16 expressly defines the First Amendment activity from which a cause of action must arise within the meaning of section 425.16, subdivision (b)(1) (discussed, *ante*), in order to be the proper subject of a special motion to strike under the anti-SLAPP statute. (*Church of Scientology, supra,* 42 Cal.App.4th at p. 647.) Subdivision (e), as amended in 1997, provides that the phrase " 'act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue,' " as used in section 425.16, includes four categories of conduct, which are separately defined in the subdivision's four clauses:

1) "[A]ny written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(1));

2) "[A]ny written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" (§ 425.16, subd. (e)(2));

3) "[A]ny written or oral statement or writing made in a place open to the public or a public forum *in connection with an issue of public interest*" (§ 425.16, subd. (e)(3), italics added); or

4) "[A]ny other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with*

---

[18]See entire text of subdivision (e) at footnote 2, *ante*; see also 5 Witkin, California Procedure (2000 supp.) Pleading, section 962(b), pages 22-23.

*a public issue or an issue of public interest"* (§ 425.16, subd. (e)(4), italics added).

 i. *"Public issue" limitations*

In its majority opinion in *Briggs, supra,* 19 Cal.4th 1106, the California Supreme Court recently held that a SLAPP defendant moving under section 425.16 to strike a cause of action arising from a statement made before, or in connection with an issue under consideration by, a legally authorized official proceeding within the meaning of clauses (1) and (2) of subdivision (e) of that section (discussed, *ante*) *"need not separately demonstrate that the statement concerned an issue of public significance." (Briggs, supra,* 19 Cal.4th at p. 1123, italics added, fn. omitted.) The high court explained: "[T]hat the Legislature, when enacting section 425.16, expressed in the statute's preamble a desire 'to encourage continued participation in matters of public significance' (§ 425.16, subd. (a)) does not imply the Legislature intended to impose, in the statute's operative sections, an across-the-board 'issue of public interest' pleading requirement." (*Briggs, supra,* 19 Cal.4th at p. 1118.) The *Briggs* court further explained that *"[c]lauses (3) and (4) of section 425.16, subdivision (e),* concerning statements made in public fora and 'other conduct' implicating speech or petition rights, *include an express 'issue of public interest' limitation; clauses (1) and (2),* concerning statements made before or in connection with issues under review by official proceedings, *contain no such limitation.* In light of this variation in phraseology, it must be presumed the Legislature intended different 'issue' requirements to apply to anti-SLAPP motions brought under clauses (3) and (4) of subdivision (e) than to motions brought under clauses (1) and (2). [Citation]." (*Briggs, supra,* 19 Cal.4th at p. 1117, italics added.)

The *Briggs* majority decision clarifies that clauses (1) and (2) of subdivision (e) of the anti-SLAPP statute (§ 425.16) protect conduct involving statements that implicate First Amendment speech or petition rights and are made either "before" any legally authorized legislative, executive, judicial or other official proceeding (§ 425.16, subd. (e)(1)), or "in connection with issues under review by" any such official proceeding (§ 425.16, subd. (e)(2)); and a defendant who brings a special motion under section 425.16 to strike a lawsuit that arises from such protected conduct is not required to plead and prove that the defendant's statements involved an issue of public interest. (*Briggs, supra,* 19 Cal.4th at p. 1123 ["we conclude the Court of Appeal erred in construing section 425.16 as if, contrary to the statute's plain language, clauses (1) and (2) of subdivision (e) contained an 'issue of public interest' limitation"].)

*Briggs* also clarifies that clauses (3) and (4) of subdivision (e) of section 425.16 protect conduct involving statements made in public fora (§ 425.16,

subd. (e)(3)), and "other conduct" that implicates First Amendment speech or petition rights (§ 425.16, subd. (e)(4)), but only if such public fora statements are made in connection with, or such "other conduct" is in furtherance of, a public issue; and a defendant who brings a special motion under section 425.16 to strike a lawsuit that arises from such protected conduct is not required to plead and prove that the defendant's statements involved an issue of public interest. (*Briggs, supra,* 19 Cal.4th at p. 1123 ["For potential cases where an analog to the 'official proceeding' bright-line test[19] does not readily appear—viz., 'public forum' (§ 425.16, subd. (e)(3)) and 'other conduct' (§ 425.16, subd. (e)(4)) cases—the Legislature *did* include an 'issue of public interest' limitation." (original italics)].)

### ii. *Burdens of proof*

On a special motion to strike under the anti-SLAPP statute, "[t]he moving party bears the initial burden of establishing a prima facie showing the plaintiff's cause of action arises from the defendant's free speech or petition activity." (*Church of Scientology, supra,* 42 Cal.App.4th at p. 646, italics omitted, citing *Wilcox, supra,* 27 Cal.App.4th at p. 820.) The moving SLAPP defendant may meet this burden by showing the act which forms the basis for the plaintiff's cause of action was an act that falls within one of the four categories of conduct described in subdivision (e) of section 425.16 (discussed, *ante*).

"If the defendant establishes a prima facie case, then the burden shifts to the plaintiff to establish ' "a probability that the plaintiff will prevail on the claim," ' i.e., 'make a prima facie showing of facts which would, if proved at trial, support a judgment in plaintiff's favor.' [Citation.]" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 646, quoting from *Wilcox, supra,* 27 Cal.App.4th at p. 823, which quoted former subd. (b) (now subd. (b)(1)) of § 425.16.)

"In making its determination, the trial court is required to consider the pleadings and the supporting and opposing affidavits stating the facts upon which the liability or defense is based." (*Church of Scientology, supra,* 42

---

[19]The *Briggs* court explained this "official proceeding" bright-line test: "In effectively deeming statements and writings made before or connected with issues being considered by any official proceeding to have public significance per se, the Legislature afforded trial courts a reasonable, *bright-line test* applicable to a large class of potential section 425.16 motions. As discussed, the 'Legislature when crafting the clause two definition clearly and unambiguously resorted to an easily understandable concept of what constitutes a public issue.' [Citation.] For the sake of clarity, as well as under the compulsion of the legal principles earlier discussed, we shall not disturb the *bright-line 'official proceeding' test the Legislature has embedded in subdivision (e), clauses (1) and (2)*." (*Briggs, supra,* 19 Cal.4th at p. 1122, italics added.)

Cal.App.4th at p. 646; see also § 425.16, subd. (b)(2) ["In making its determination, the court shall consider the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based"].)

### B. *Dowling's Action Falls Within the Ambit of Section 425.16*

■ The first question we must decide is whether Zimmerman met her initial burden of establishing a prima facie showing that Dowling's action against her for defamation, misrepresentation, and intentional and negligent infliction of emotional distress arose from any conduct on her part that implicated First Amendment speech or petition rights and was protected by any one of the four clauses set forth in section 425.16, subdivision (e). (§ 425.16, subd. (b)(1); *Church of Scientology, supra,* 42 Cal.App.4th at p. 646.) We conclude Zimmerman met her burden.

Dowling's complaint shows that his defamation cause of action was based only on the allegation that Zimmerman's unspecified "words and actions" had "impugned" his reputation, and that she had "consistently published" unspecified "false allegations" that had "lowered" his reputation "in the eyes of [his] business associates and tenants . . . ." The complaint also shows that Dowling's misrepresentation cause of action was based on his allegation that Zimmerman knowingly made unspecified false "representations," and concealed unspecific "material facts," during unspecified "negotiations," presumably Zimmerman's negotiation on behalf of her clients, the Whites, of the stipulated settlement of the Dowling's third unlawful detainer action against the Whites. Last, Dowling's two emotional distress claims were both based on his allegation that Zimmerman "published a false letter," presumably the November 15 letter (discussed, *ante*).

In support of her special motion under the anti-SLAPP statute to strike Dowling's complaint, Zimmerman argued that the complaint was a meritless SLAPP suit intended to "intimidate and punish" her for assisting the Whites in exercising their lawful right to petition the courts and the PTOA on the public issue of residential safety and nuisances within the meaning of subdivision (e), clauses (2) and (4), of section 425.16 (see text in fn. 2, *ante*). She submitted her own declaration, the declarations of the Whites, and documentary evidence that included (among other things) the November 15 letter, and a harassment restraining order that Edward White obtained in October 1996 prohibiting Dowling from harassing the Whites.

The submitted declarations show that in October 1996, after the Dowlings filed their third unlawful detainer action against the Whites, Zimmerman

agreed to represent the Whites in that action on a pro bono basis. When the Whites reported to her that Dowling was continuing to harass them, Zimmerman sent several letters to Dowling's attorney, Kopp, in an effort to investigate the matter and stop the claimed harassment pending the outcome of the unlawful detainer proceeding. In her declaration, Zimmerman states she negotiated a stipulated settlement of that action.

The declarations also show that the Whites asked Zimmerman to petition the PTOA board of directors through the PTOA's property manager, Pollack, to investigate the Whites' claims regarding certain disturbances in the neighborhood and to assist them in stopping the claimed harassment by Dowling so that the Whites could have the quiet use and enjoyment of the townhouse in the PTOA complex. In her capacity as the Whites' attorney and based on information they provided to her, Zimmerman prepared the November 15 letter and sent it to Pollack, the PTOA's property manager. The declarations show the Whites had informed Zimmerman that Pollack, as the property manager, was the appropriate person to whom PTOA homeowner complaints should be directed regarding safety concerns, ingress and egress problems, and nuisances in the complex. Zimmerman and Edward White state that, based on information the Whites provided to her, Zimmerman sent the letter to five other individuals she believed were members of the PTOA board of directors.

In the November 15 letter, Zimmerman identified herself as the Whites' attorney, and explained that the purpose of the letter was "to advise you of certain unusual and even dangerous conditions occurring on the . . . property and complex, and to give you the opportunity to correct and eliminate them. The situation interferes with the Whites'[] use and enjoyment of their property and may very well affect other residents' enjoyment. [¶] . . . [¶] This letter is notice to the PTOA, its board of directors, officers, and agents that the safety of your residents and owners may be at risk and we hope you will assist us in our efforts to create a more pleasant environment in the complex."

In the letter, Zimmerman provided information about the unlawful detainer dispute between the Dowlings and the Whites, and made reference to Dowling's harassment of the Whites. Without expressly accusing Dowling of forgery, the letter also stated that the July 1996 unlawful detainer action filed by Dowling was dismissed based on evidence he had "rel[ied]" on a "forged document."[20] The letter also described various "unusual occurrences" and asserted that Dowling's "continuous threats against the Whites

---

[20]The letter stated in part: "In July 1996, Mr. Dowling filed an unlawful detainer action which his attorney dismissed once it was learned that *Mr. Dowling was relying on a forged*

and his daily prowling around their condo creates fear and apprehension" in Grace White.

We conclude the court properly found that Zimmerman met her initial burden of establishing a prima facie showing that Dowling's action arose both from statements she made "made in connection with an issue under consideration or review by a . . . judicial body" within the meaning of section 425.16, subdivision (e)(2), and from conduct "in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue" within the meaning of section 425.16, subdivision (e)(4). The complaint and the evidence submitted by Zimmerman established that all four of the tort causes of action alleged against her in Dowling's complaint arose from her acts of negotiating a stipulated settlement of a pending unlawful detainer action against the Whites, and of writing and publishing the November 15 letter, while she was acting in her capacity as pro bono counsel for the Whites. The letter was written in connection with the pending unlawful detainer action. The letter also addressed conduct by Dowling that arguably involved public issues of nuisance and safety. It stated, for example, that someone had twice entered the Whites' locked garage and turned the dial of their water heater off, which "could be extremely dangerous, even fatal, to anyone in that building should the gas remain on, the flame be extinguished, and had the gas collected in the garage." Zimmerman stated in her declaration that she directed the letter regarding the Whites' complaints about the "neighborhood disturbances" to Pollack at his request, as he would forward such complaints to PTOA board members. The letter expressly stated that its purpose was to advise the PTOA, through these individuals, of the potential nuisance and the safety concerns.

## C. *Dowling Failed to Show a Probability of Prevailing on His Claims*

Because Zimmerman met her initial burden of making a prima facie showing that Dowling's lawsuit arose from her exercise of her free speech and petition rights, and the causes of action he alleged fell within the ambit of section 425.16, the burden shifted to Dowling to establish a probability of prevailing on those claims. (§ 425.16, subd. (b)(1); *Church of Scientology, supra,* 42 Cal.App.4th at p. 653.) We conclude he failed to meet this burden.

As already discussed, Dowling's claims arose from Zimmerman's acts of representing the Whites in connection with Dowling's third unlawful detainer action, negotiating a stipulated settlement of that action on their

document to support his case. [*Someone forged Mr. White's name on a rental agreement.*] . . . In September 1996, Mr. Dowling lost the second unlawful detainer action against the Whites even though [or because] he offered the forged rental agreement as evidence." (Italics added.)

behalf, and writing and distributing to interested parties the November 15 letter, which pertained to the legal disputes between the Dowlings and the Whites, Dowling's harassment of the Whites, and the Whites' complaints about safety and nuisance problems at the townhouse complex where they lived.

We first conclude that the court properly found Dowling's complaint was pleaded without the requisite specificity. As already noted, Dowling's complaint alleged four causes of action against Zimmerman: defamation (fifth cause of action), misrepresentation (sixth cause of action), intentional infliction of emotional distress (tenth cause of action), and negligent infliction of emotional distress (eleventh cause of action). We preliminarily note that "[t]he favored causes of action in SLAPP suits are *defamation*, various business torts such as interference with prospective economic advantage, nuisance and *intentional infliction of emotional distress*." (*Wilcox, supra*, 27 Cal.App.4th at p. 816, italics added.) Here, the complaint shows that Dowling's defamation cause of action was based only on the conclusory allegation that Zimmerman's unspecified "words and actions" and unspecified "false allegations" had "lowered" his reputation. As already discussed, in the letter Zimmerman did not accuse Dowling of forgery; she stated that the July 1996 unlawful detainer action filed by Dowling was dismissed based on evidence he had "rel[ied]" on a·"forged document."[21] The letter did not state that Dowling knew or should have known the lease agreement was forged at the time he relied on it. If allegedly defamatory statements are "ambiguous and susceptible of a harmless as well as a defamatory meaning, the plaintiff must state the defamatory meaning [the "innuendo"] in which, according to his theory, they were used and understood in the light of the circumstances alleged in the inducement." (5 Witkin, Cal. Procedure (4th ed. 1997) Pleading, § 698, p. 158; see also *Washer v. Bank of America* (1943) 21 Cal.2d 822, 828 [136 P.2d 297, 155 A.L.R. 1338].) Here, Dowling failed to plead the requisite innuendo.

Dowling's misrepresentation cause of action was based on his allegations that Zimmerman knowingly made unspecified false "representations," and concealed unspecific "material facts," during unspecified "negotiations." It is well established that, "[i]n California, fraud must be pled specifically; general and conclusory allegations do not suffice. [Citations.] 'Thus " 'the policy of liberal construction of the pleadings . . . will not ordinarily be invoked to sustain a pleading defective in any material respect.' " [Citation.] [¶] This particularity requirement necessitates pleading facts which "show how, when, where, to whom, and by what means the representations were tendered." ' [Citation.]" (*Lazar v. Superior Court* (1996) 12 Cal.4th 631, 645

---

[21]See footnote 20, *ante*.

[49 Cal.Rptr.2d 377, 909 P.2d 981], italics omitted.) Dowling's conclusory allegations of misrepresentation are fatally defective.

Dowling's remaining causes of action for intentional and negligent infliction of emotional distress were also both based on a conclusory allegation, that Zimmerman "published a false letter" (presumably the November 15 letter). With respect to the intentional tort, Dowling failed to properly plead the requisite ultimate fact of extreme and outrageous conduct. (See generally 5 Witkin, Summary of Cal. Law (9th ed. 1988) Torts, § 404, p. 484.) Regarding his claim sounding in negligence, which incorporates by reference all preceding factual allegations, Dowling failed to plead facts showing that Zimmerman owed him a duty of care not to communicate with Pollack, the PTOA property manager, on behalf of her clients regarding the suspected incidents of harassment occurring in the townhouse complex while the underlying unlawful detainer action was pending. We conclude Dowling's defectively pleaded complaint facially appears to be a SLAPP suit. (*Wilcox*, *supra*, 27 Cal.App.4th at p. 816.)

We also conclude the court properly found that, "the [November 15] letter would not have been written but for the pending litigation," and the letter was privileged under the litigation privilege codified in Civil Code section 47, subdivision (b).[22] Zimmerman wrote and published the letter in her capacity as pro bono counsel for the Whites, and the letter clearly pertained to the pending underlying unlawful detainer litigation. It arguably pertained also to the prior harassment injunction litigation to the extent the Whites had the right to apply for a renewal of the restraining order they had obtained against Dowling. To the extent Dowling's SLAPP complaint was also based on statements that Zimmerman made to Dowling's counsel, Kopp, while negotiating the stipulated settlement of the unlawful detainer action on behalf of the Whites, those statements were privileged under subdivision (b) of Civil Code section 47.

In sum, Dowling failed to meet his burden of establishing a probability of prevailing on his tort claims against Zimmerman. We thus conclude the court properly granted Zimmerman's special motion to strike Dowling's SLAPP complaint under the anti-SLAPP statute.

### D. *Attorney Fees*

Dowling also appeals from the portion of the judgment awarding to Zimmerman, under subdivision (c) of section 425.16, the sum of $9,300 (62 hours at the rate of $150 per hour) as reasonable attorney fees for associated

---

[22]See footnote 13, *ante*.

counsel Moneer's legal services. In her supporting attorney fees motion declaration, Zimmerman stated she paid attorney Moneer a "nominal" retainer fee of $1,300 to represent her in the instant case "as special counsel of record for the sole purpose of handling the [a]nti-SLAPP motion per [section] 425.16," and Moneer's fee was contingent on the result of her motion under subdivision (c) of the anti-SLAPP statute. We must decide, as a matter of first impression, the issue of whether a SLAPP suit defendant, who appears in the action in propria persona and successfully moves for dismissal of the suit under section 425.16 with the assistance of specially appearing retained counsel, is entitled to an award of reasonable attorney fees under the mandatory attorney fees provisions of subdivision (c) of that section.

### 1. *Zimmerman's pro se status assisted by retained anti-SLAPP counsel*

Dowling first contends the court abused its discretion by awarding attorney fees to Zimmerman because she elected to appear in this action in pro se. We reject this contention. Under subdivision (c) of section 425.16, a SLAPP defendant who prevails on a special motion to strike is entitled to a mandatory award of reasonable attorney fees. Subdivision (c) of that section provides in part: "In any action subject to subdivision (b), a prevailing defendant on a special motion to strike *shall* be entitled to recover his or her attorney's fees and costs." (Italics added.) That subdivision "authorizes the court to make an award of reasonable attorney fees to a prevailing defendant, which will adequately compensate the defendant for the expense of responding to a baseless lawsuit. [Citation.]" (*Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 785 [54 Cal.Rptr.2d 830] (*Dove Audio, Inc.*).)

Dowling cites no authority, and we have found none, for the proposition that a SLAPP defendant who initially makes an appearance in the action in pro se and later retains counsel who successfully brings both a special motion to strike the complaint under section 425.16, and a motion for reasonable fees (and costs) under subdivision (c) of that section, is barred from recovering such fees. The case law authorities upon which Dowling relies are inapposite because none involved an award of fees under the anti-SLAPP statute.[23]

Because there is no clear statutory or case law authority on point, the determination of the issue presented must be guided by interpretation of

---

[23]*Board of Commissioners v. Younger* (1865) 29 Cal. 147 (*Younger*); *Trope v. Katz* (1995) 11 Cal.4th 274 [45 Cal.Rptr.2d 241, 902 P.2d 259] (*Trope*); and *Argaman v. Ratan* (1999) 73 Cal.App.4th 1173 [86 Cal.Rptr.2d 917] (*Argaman*). The *Younger* decision is silent on the issue of whether a pro se litigant may recover statutory attorney fees. The *Trope* decision held that an attorney who chooses to litigate in propria persona an action to enforce a contract containing an attorney fees provision, and who does not pay or become liable to pay

legislative intent underlying section 425.16 under the rules of statutory construction, which "require courts to construe a statute to promote its purpose, render it reasonable, and avoid absurd consequences." (*Robertson v. Rodriguez* (1995) 36 Cal.App.4th 347, 361 [42 Cal.Rptr.2d 464], citing *Brown v. Superior Court* (1984) 37 Cal.3d 477, 484-485 [208 Cal.Rptr. 724, 691 P.2d 272].) "The fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. [Citations.]" (*Select Base Materials v. Board of Equal.* (1959) 51 Cal.2d 640, 645 [335 P.2d 672] (*Select Base Materials*).)

As already discussed, section 425.16 was enacted to deter and prevent SLAPP suits. (*Church of Scientology, supra,* 42 Cal.App.4th at p. 636.) The anti-SLAPP statute is California's response to the problems created by meritless lawsuits brought to harass those who have exercised their First Amendment constitutional rights of free speech and petition for the redress of grievances. (*Id.* at p. 644.) The legislative intent to afford the victims of SLAPP suits a swift and effective remedy is clear. "California enacted section 425.16 to provide a procedural remedy to resolve such a suit *expeditiously.*" (*Church of Scientology, supra,* 42 Cal.App.4th at p. 645, italics added.) The Legislature expressly set forth the intent and purpose underlying the anti-SLAPP statute in subdivision (a) of section 425.16: "The Legislature finds and declares that there has been a disturbing increase in lawsuits brought primarily to chill the valid exercise of the constitutional rights of freedom of speech and petition for the redress of grievances. The Legislature finds and declares that it is in the public interest to encourage continued participation in matters of public significance, and that this participation should not be chilled through abuse of the judicial process. *To this end, this section shall be construed broadly.*" (Italics added.)

In deciding the issue presented, this court must therefore construe the anti-SLAPP statute "broadly" in order to effectuate its purposes and give

---

consideration in exchange for legal representation, cannot recover reasonable attorney fees under Civil Code section 1717, which by its express terms applies only to contracts providing for recovery of attorney fees "which are *incurred* to enforce that contract." (*Trope, supra,* 11 Cal.4th at pp. 280, 292, italics added.) We also note the *Trope* decision is factually distinguishable. Here, as already noted, the record shows that Zimmerman paid Attorney Moneer a "nominal" retainer fee of $1,300 to represent her in the instant case "as special counsel of record for the sole purpose of handling the [a]nti-SLAPP motion per [section] section 425.16," and Moneer's fee was contingent on the result of her motion under subdivision (c) of the anti-SLAPP statute. The *Argaman* decision held that an attorney who chooses to litigate in propria persona an action, and who does not pay or become liable to pay consideration in exchange for legal representation, "may not be awarded a monetary discovery sanction under sections 2030, subdivision (*l*) and 2023, subdivision (b)(1), based on compensation for the time and effort expended as a result of a misuse of the discovery process." (*Argaman, supra,* 73 Cal.App.4th at pp. 1175, 1180, fn. omitted.)

effect to the Legislature's intent to provide a swift and effective remedy to SLAPP suit defendants. To prevail on a special motion to strike under section 425.16, a SLAPP defendant ordinarily must have competent legal representation, regardless of whether the defendant is an attorney or whether the defendant initially appears in the action in propria persona. The special motion to strike a SLAPP suit provided under section 425.16 is the remedial tool the Legislature gave to victims of such meritless suits. In our view, the purpose of the anti-SLAPP statute will be promoted by construing that statute broadly to permit a pro se SLAPP defendant, who has successfully brought a special motion to strike the offending SLAPP suit with the assistance of specially retained counsel, to recover mandatory reasonable attorney fees to compensate the retained counsel for the legal services provided. We note that in the instant case, Zimmerman provided evidence that without the mandatory attorney fees provision set forth in subdivision (c) of section 425.16, she would not have been able to afford Moneer's services as an anti-SLAPP specialist.

■ We hold that in order to effectuate the purpose of the anti-SLAPP statute and the Legislature's intent to deter SLAPP suits, a defendant who appears in a SLAPP action in propria persona and later retains specially appearing counsel who successfully brings on behalf of the defendant a special motion to strike the complaint under section 425.16, is entitled to recover an award of reasonable attorney fees under the mandatory provisions of subdivision (c) of that section in order to compensate the retained counsel for the legal services provided in connection with both the special motion to strike, and the recovery of attorney fees and costs under that subdivision.

2. *Amount of the attorney fees award*

Dowling contends the amount awarded to Zimmerman ($9,300) as reasonable attorney fees under subdivision (c) of section 425.16 was excessive. He further contends the amount of such an award to a prevailing SLAPP defendant should not exceed the amount of attorney fees the defendant actually incurred (here, the sum of $1,300). We reject these contentions.

The record in the instant case shows that the modified contingent fee agreement into which Zimmerman and Moneer entered provided that Zimmerman would pay him a "nominal" retainer in the amount of $1,300, he would collect his attorney fees from her under the anti-SLAPP statute if she prevailed on her special motion to strike Dowling's SLAPP complaint, but he would "absorb the loss of his billable time" if the court denied the motion. In support of Zimmerman's motion for reasonable attorney fees, which he litigated on her behalf, Moneer submitted his own declaration and

other evidence showing he had spent 176.5 hours of billable time on her behalf, at the rate of $350 per hour, on the special motion to strike and the attorney fees motion, and the total amount of Zimmerman's attorney fees request was $61,862.50. The court awarded Zimmerman, under subdivision (c) of section 425.16, the sum of only $9,300 (62 hours at the rate of $150 per hour) as reasonable attorney fees for Moneer's legal services (plus costs incurred in furtherance of the special motion to strike in the amount of $580). This modest amount is clearly not excessive.

We conclude the court's attorney fees award did not constitute an abuse of discretion. Construing subdivision (c) of section 425.16 broadly, as we must (§ 425.16, subd. (a)), we reject Dowling's contention that the court should have limited the award to the "incurred" amount of $1,300.

### E. *Attorney Fees on Appeal*

In her respondent's brief on appeal, Zimmerman asks this court to award her reasonable attorney fees and costs on appeal. As already discussed, subdivision (c) of section 425.16 provides for an award of reasonable attorney fees to a SLAPP defendant who successfully brings a motion to strike, and we have concluded that the court's attorney fees award in this matter was proper despite Zimmerman's status as a pro se litigant.

" 'A statute authorizing an attorney fee award at the trial court level includes appellate attorney fees unless the statute specifically provides otherwise.' [Citation.]" (*Dove Audio, Inc., supra,* 47 Cal.App.4th at p. 785.) Section 425.16, subdivision (c) provides that a prevailing defendant is entitled to recover attorney fees and costs, and does not preclude recovery on appeal. (*Dove Audio, Inc., supra,* 47 Cal.App.4th at p. 785.) Accordingly, Zimmerman is awarded reasonable attorney fees on this appeal, the amount of which is to be determined by the trial court upon remand.

### II. *Petition*

In his petition for writ of supersedeas, Dowling seeks a stay of Zimmerman's enforcement of the portion of the judgment awarding her reasonable attorney fees and costs under the anti-SLAPP statute pending disposition of his appeal in this matter. Dowling appealed from the judgment without filing an appeal bond or other undertaking. Zimmerman attempted to enforce the judgment by serving Dowling with a subpoena duces tecum and an order to appear at a judgment debtor's examination, and Dowling brought a motion to quash the subpoena and vacate the examination, contending that the perfecting of his appeal automatically stayed enforcement of the judgment

under section 917.1, subdivision (d). The court denied Dowling's motion on the ground that the award of attorney fees in favor of Zimmerman under section 425.16 was a judgment directing "payment of money" within the meaning of section 917.1, subdivision (a)(1), and thus the perfecting of Dowling's appeal did not automatically stay enforcement of the judgment. The court also found that an undertaking "consistent with the relevant statutes" was required to effect a stay pending the appeal.

■ The issue we must decide is whether a prevailing SLAPP defendant's enforcement of a judgment awarding reasonable attorney fees and costs under subdivision (c) of section 425.16 is automatically stayed by the SLAPP plaintiff's perfecting of an appeal from that judgment. We conclude that enforcement of such judgment is not stayed absent the filing of an appropriate appeal bond or other undertaking.

### A. Canons of Statutory Interpretation

The question presented is governed by statutes. The applicable canons of statutory construction that guide our decision are well settled. ■ As already discussed, the fundamental rule of statutory construction is that the court should ascertain the intent of the Legislature so as to effectuate the purpose of the law. (*Select Base Materials, supra,* 51 Cal.2d at p. 645.) In determining that intent, we first examine the words of the statute itself. (*California Teachers Assn. v. San Diego Community College Dist.* (1981) 28 Cal.3d 692, 698 [170 Cal.Rptr. 817, 621 P.2d 856].) Under the so-called "plain meaning" rule, courts seek to give the words employed by the Legislature their usual and ordinary meaning. (*Lungren v. Deukmejian* (1988) 45 Cal.3d 727, 735 [248 Cal.Rptr. 115, 755 P.2d 299].) If the language of the statute is clear and unambiguous, there is no need for construction. (*Ibid.*) However, "the 'plain meaning' rule does not prohibit a court from determining whether the literal meaning of a statute comports with its purpose." (*Ibid.*) "If . . . the terms of the statute provide no definitive answer, then courts may resort to extrinsic sources, including the ostensible objects to be achieved and the legislative history." (*People v. Coronado* (1995) 12 Cal.4th 145, 151 [48 Cal.Rptr.2d 77, 906 P.2d 1232].) " 'We must select the construction that comports most closely with the apparent intent of the Legislature, with a view to promoting rather than defeating the general purpose of the statute, and avoid an interpretation that would lead to absurd consequences.' [Citation.]" (*Ibid.*) The legislative purpose will not be sacrificed to a literal construction of any part of the statute. (*Select Base Materials, supra,* 51 Cal.2d at p. 645.)

### B. Analysis

■ As a general rule (the automatic stay rule), the perfecting of an appeal automatically stays proceedings in the trial court both upon the

judgment or order appealed from, and upon the matters embraced therein or affected thereby, including enforcement of the judgment or order. (See generally Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 1999) ¶¶ 7:1 to 7:2, p. 7-1.) The automatic stay rule is codified in section 916, subdivision (a),[24] which provides in part: "*Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings* in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, *including enforcement of the judgment or order . . . .*" (Italics added.)

The purpose of the automatic stay rule is "to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it. [Citation.]" (*Elsea v. Saberi* (1992) 4 Cal.App.4th 625, 629 [5 Cal.Rptr.2d 742].)

The automatic stay rule is subject to certain exceptions. Perhaps the most common of the specified exceptions to the statutory automatic stay is set forth in section 917.1,[25] subdivision (a)(1) (hereafter also referred to as section 917.1(a)(1) or the money judgment exception), which provides: "(a)

---

[24]In its entirety, subdivision (a) of section 916 provides: "Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order, but the trial court may proceed upon any other matter embraced in the action and not affected by the judgment or order."

[25]In its entirety, section 917.1 (as amended by Stats. 1993, ch. 456, § 13, pp. 2534-2535) provides: "(a) Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for any of the following: [¶] (1) Money or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action. [¶] (2) Costs awarded pursuant to Section 998 which otherwise would not have been awarded as costs pursuant to Section 1033.5. [¶] (3) Costs awarded pursuant to Section 1141.21 which otherwise would not have been awarded as costs pursuant to Section 1033.5. [¶] (b) The undertaking shall be on condition that if the judgment or order or any part of it is affirmed or the appeal is withdrawn or dismissed, the party ordered to pay shall pay the amount of the judgment or order, or the part of it as to which the judgment or order is affirmed, as entered after the receipt of the remittitur, together with any interest which may have accrued pending the appeal and entry of the remittitur, and costs which may be awarded against the appellant on appeal. This section shall not apply in cases where the money to be paid is in the actual or constructive custody of the court; and such cases shall be governed, instead, by the provisions of Section 917.2. The undertaking shall be for double the amount of the judgment or order unless given by an admitted surety insurer in which event it shall be for one and one-half times the amount of the judgment or order. The liability on the undertaking may be enforced if the party ordered to pay does not make the payment within 30 days after the filing of the remittitur from the reviewing court. [¶] (c) If a surety on the undertaking pays the judgment,

Unless an undertaking is given, the perfecting of an appeal shall not stay enforcement of the judgment or order in the trial court if the judgment or order is for any of the following: [¶] (1) *Money or the payment of money*, whether consisting of a special fund or not, and whether payable by the appellant or another party to the action." (Italics added.)

If the money judgment exception applies, a bond or undertaking is required to obtain a stay of enforcement of a judgment or order pending disposition of the appeal. (§ 917.1(a)(1); see Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra*, ¶¶ 7:120 to 7:121, p. 7-30.)

 The question in this case is whether the portion of the judgment awarding reasonable attorney fees and costs to Zimmerman under section 425.16, subdivision (c), is a judgment for "money or the payment of money" within the meaning of the money judgment exception codified in section 917.1(a)(1) such that a bond or undertaking was required to stay enforcement of the judgment pending the disposition of Dowling's appeal. To answer this question we must not only interpret section 917.1(a)(1) in light of the legislative intent underlying the anti-SLAPP statute with a view to promoting the general purpose of that statute (discussed, *post*), but also harmonize these sections with the provisions of section 1033.5, subdivisions (a)(10)(A), (B), (C) and (c)(5), and section 917.1, subdivision (d) (hereafter also referred to as section 917.1(d)).

When the Legislature amended section 917.1 in 1993, it amended subdivision (d)[26] of that section (see Stats. 1993, ch. 456, § 13, p. 2535), which now provides: "(d) Costs awarded by the trial court under Chapter 6

---

either with or without action, after the judgment is affirmed, the surety is substituted to the rights of the creditor and is entitled to control, enforce, and satisfy the judgment, in all respects as if the surety had recovered the judgment. [¶] (d) Costs awarded by the trial court under Chapter 6 (commencing with Section 1021) of Title 14 shall be included in the amount of the judgment or order for the purpose of applying paragraph (1) of subdivision (a) and subdivision (b). However, no undertaking shall be required pursuant to this section solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14."

[26]Former subdivision (d) of section 917.1, as amended by Statutes 1986, chapter 1174, section 1, page 4173, provided: "Costs awarded by the trial court under Chapter 6 (commencing with Section 1021) of Title 14 shall be included in the amount of the judgment or order for the purpose of applying *subdivisions (a) and subdivision (b).*" (Italics added.) The 1993 amendment of section 917.1, subdivision (d), substituted the phrase "paragraph (1) of subdivision (a) and subdivision (b)" in the place of the former phrase "subdivisions (a) and (b)." This change in the language of subdivision (d) was intended to "indicat[e] that routine costs shall be added to the amount of a money judgment when determining the amount of an undertaking required to stay execution pending appeal . . . ." (*Gallardo v. Specialty Restaurants Corp.* (2000) 84 Cal.App.4th 463, 469 [100 Cal.Rptr.2d 884].) The 1993 amendment also added the second sentence of subdivision (d) ("However, no undertaking shall be required pursuant to this section solely for costs awarded under Chapter 6 (commencing with

(commencing with Section 1021)[27] of Title 14 shall be included in the amount of the judgment or order for the purpose of applying paragraph (1) of subdivision (a) and subdivision (b). However, *no undertaking shall be required pursuant to this section solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14.*" (Italics added.)

"The 1993 amendment . . . added the second sentence of subdivision (d), specifying that no undertaking is required for a judgment consisting of only costs awarded under section 1021 et seq." (*Gallardo v. Specialty Restaurants Corp., supra,* 84 Cal.App.4th at p. 469, fn. 5.) Thus, no bond or undertaking is required to stay enforcement of a judgment or order that consists only of costs awarded under section 1021 et seq.; enforcement of such a "costs only" judgment is automatically stayed pending disposition of a perfected appeal. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶ 7:132, p. 7-32, citing *Vadas v. Sosnowski* (1989) 210 Cal.App.3d 471, 475 [258 Cal.Rptr. 374] [which predated amended § 917.1(d)].) Expressing this legal principle in terms of incidental or "routine" costs, one leading commentator states that "[a] judgment for incidental routine costs of suit alone (as distinguished from 'discretionary' costs awards or 'money judgments' consisting of damages and costs) is automatically stayed by appeal." (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, ¶ 7:91, *supra,* p. 7-24.1, citing § 917.1(d); *Vadas v. Sosnowski, supra,* 210 Cal.App.3d at p. 475 & *Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797, 805 [12 Cal.Rptr.2d 696, 838 P.2d 218] (*Bank of San Pedro*) [holding that "a judgment awarding expert witness fees under section 998, subdivision (c), even in the absence of any other monetary relief, is a judgment that 'directs the payment of money' within the scope of [former] section 917.1, subdivision (a) and that such judgment is therefore not automatically stayed by the perfecting of an appeal"].)

Although section 917.1(d) does not expressly refer to attorney fees awards, one commentator has suggested that "a judgment solely for *attorney fees,* when awarded pursuant to contract, *statute* or 'law,' should likewise be *stayed automatically on appeal* . . . because such fee awards are expressly denominated by [section] 1021 et seq. as recoverable *costs of suit.*" (Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs, *supra,* ¶ 7:133, p. 7-33, citing § 1033.5, subds. (a)(10)(A), (B), (C) & (c)(5), original italics omitted, new italics added.)

Section 1021) of Title 14"). (*Gallardo v. Specialty Restaurants Corp., supra,* 84 Cal.App.4th at p. 469.)

[27]Section 1021 provides: "Except as attorney's fees are specifically provided for by statute, the measure and mode of compensation of attorneys and counselors at law is left to the agreement, express or implied, of the parties; but parties to actions or proceedings are entitled to their costs, as hereinafter provided."

Section 1033.5 provides for the recovery of specified costs under section 1032.[28] Subdivisions (a)(10)(B) and (c)(5) of that section, as amended by Statutes 1993, chapter 456, section 15, pages 2537-21, provide in part: "(a) The following items are allowable as costs under Section 1032: [¶] . . . [¶] (10) *Attorney fees, when authorized by any of the following*: [¶] (A) Contract. ▮ (B) *Statute*. [¶] (C) *Law*. [¶] . . . [¶] (c) Any award of costs shall be subject to the following: [¶] . . . [¶] (5) *When any statute of this state refers to the award of 'costs and attorney's fees,' attorney's fees are an item and component of the costs to be awarded and are allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a)*. Any claim not based upon the court's established schedule of attorney's fees for actions on a contract shall bear the burden of proof. Attorney's fees allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a) may be fixed as follows: (A) upon a noticed motion, (B) at the time a statement of decision is rendered, (C) upon application supported by affidavit made concurrently with a claim for other costs, or (D) upon entry of default judgment. Attorney's fees allowable as costs pursuant to *subparagraph (A) or (C) of paragraph (10)* of subdivision (a) shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties. [¶] Attorney's fees awarded pursuant to Section 1717 of the Civil Code are allowable costs under Section 1032 as authorized by subparagraph (A) of paragraph (10) of subdivision (a)." (Italics added.)

"The 1993 amendment, in subd. (a)(10) [of section 1033.5] relating to attorney fees, substituted '*any of the following*' for 'either of the following' and added '(C) Law'; and in subd. (c)(5), relating to references in statutes to awards of costs and attorney's fees, substituted '*subparagraph (A) or (C) of paragraph (10)*' for 'subparagraph (A) of paragraph (10)[.]'" (Historical and Statutory Notes, 18A West's Ann. Code Civ. Proc. (2000 supp.) foll. § 1033.5, p. 71, italics added.)

In light of the foregoing labyrinth of statutory authority, and applying the canons of statutory interpretation already discussed, we interpret section

---

[28]Section 1032, which is referenced in section 1033.5, subdivisions (a) and (c), provides in subdivision (b): "Except as otherwise expressly provided by statute, a *prevailing party is entitled as a matter of right to recover costs* in any action or proceeding." (Italics added.) The term "prevailing party" is defined in subdivision (a)(4) of that section, which provides in part: "*'Prevailing party' includes the party with a net monetary recovery, a defendant in whose favor a dismissal is entered*, a defendant where neither plaintiff nor defendant obtains any relief, and a defendant as against those plaintiffs who do not recover any relief against that defendant. When any party recovers other than monetary relief and in situations other than as specified, the 'prevailing party' shall be as determined by the court, and under those circumstances, the court, in its discretion, may allow costs or not." (Italics added.)

917.1(d) as requiring an appeal bond or undertaking to stay enforcement of a judgment for reasonable attorney fees and costs awarded to a prevailing SLAPP defendant under subdivision (c) of section 425.16. In our view, such a judgment entered after the granting of a special motion to strike under the anti-SLAPP statute should be treated as a judgment for "money or the payment of money" within the meaning of the money judgment exception codified in section 917.1(a)(1) such that a bond or undertaking is required to stay enforcement of the judgment pending the disposition of a SLAPP plaintiff's appeal. Turning to the express language of section 917.1, the statute that governs stays of enforcement of judgments and orders pending appeal, we note that a judgment for reasonable attorney fees and costs under the anti-SLAPP statute is unquestionably a judgment for payment of money, and is thus consistent with the language of section 917.1(a)(1), which (as already discussed) codifies the money judgment exception to the automatic stay rule and provides that a judgment for money or payment of money is not automatically stayed on appeal unless an undertaking is given. The language of amended section 917.1(d) expressly specifies that no undertaking is required for a judgment consisting of only costs awarded under section 1021 et seq. A judgment for reasonable attorney fees and costs under section 425.16, subdivision (c) (such as the one at issue in the instant writ proceeding), however, is not a judgment "solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14" within the meaning of the second sentence of subdivision (d) of section 917.1. An award of reasonable attorney fees and costs under the anti-SLAPP statute cannot be construed as an award of routine or incidental costs subject to the automatic stay rule under section 917.1(d). Section 425.16, subdivision (c) authorizes only the SLAPP *defendant* to recover reasonable attorney fees and costs after prevailing on a special motion to strike a complaint under the anti-SLAPP statute. A *plaintiff* who prevails by defeating the motion to strike is *not* entitled to recover fees and costs under the anti-SLAPP statute simply by prevailing on the motion. Under section 425.16, subdivision (c) the plaintiff may recover fees and costs only by showing that the defendant's special motion to strike was frivolous or solely intended to cause unnecessary delay within the meaning of section 128.5.[29] Thus, a statutory award of attorney fees and costs under subdivision (c) of section 425.16 is not routine because it is not

---

[29]Section 128.5 provides in its entirety: "*(a) Every trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay.* This section also applies to judicial arbitration proceedings under Chapter 2.5 (commencing with Section 1141.10) of Title 3 of Part 3. [¶] (b) For purposes of this section: [¶] (1) 'Actions or tactics' include, but are not limited to, the making or opposing of motions or the filing and service of a complaint or cross-complaint only if the actions or tactics arise from a complaint filed, or a proceeding initiated, on or before December 31, 1994. The mere filing of a complaint without service thereof on an opposing party does not

reciprocal. As already discussed, only a judgment for *routine* costs (i.e., costs awarded under § 1021 et seq.) is stayed automatically by the perfecting of an appeal. (§ 917.1(d).)

Subdivisions (a)(10)(B) and (c)(5) of section 1033.5 together provide that attorney fees, when authorized under "any" California statute that "refers to the award of 'costs and attorney's fees' " are recoverable under section 1032 as "an item and component of the costs . . . ." Here, Zimmerman was awarded reasonable attorney fees and costs under subdivision (c) of section 425.16, the first sentence of which refers to "attorney's fees and costs."[30] The foregoing subdivisions of section 1033.5, however, cannot be construed as controlling authority with respect to the issue presented here given the clear and compelling legislative intent underlying the anti-SLAPP statute and its purpose. As already explained, the Legislature expressly set forth the intent and purpose underlying the anti-SLAPP statute in section 425.16, subdivision (a),[31] which expressly states the legislative intent to "broadly" protect the right of petition. (*Briggs, supra,* 19 Cal.4th at p. 1121.) The courts have recognized that the common features of SLAPP suits are their lack of merit and chilling of defendants' valid exercise of free speech and the right to petition the government for a redress of grievances. (*Wilcox, supra,* 27 Cal.App.4th at p. 823.) By enacting the anti-SLAPP statute, the Legislature intended to provide SLAPP defendants an efficient tool to quickly and inexpensively unmask and defeat SLAPP suits. (*Ibid.*) At the trial court level, that tool is the special motion to strike a SLAPP complaint under the provisions of section 425.16, subdivision (b)(1). A determined SLAPP plaintiff intent on pursuing the litigation, however, may (as happened here) seek appellate review. We are persuaded the Legislature intended to deter SLAPP litigation not only at the trial court level, but also in the appellate courts in order to protect the proper exercise of First Amendment rights. Requiring a SLAPP plaintiff who appeals from an adverse

---

constitute 'actions or tactics' for purposes of this section. [¶] (2) 'Frivolous' means (A) totally and completely without merit or (B) for the sole purpose of harassing an opposing party. [¶] (c) Expenses pursuant to this section shall not be imposed except on notice contained in a party's moving or responding papers; or the court's own motion, after notice and opportunity to be heard. An order imposing expenses shall be in writing and shall recite in detail the conduct or circumstances justifying the order. [¶] (d) In addition to any award pursuant to this section for conduct described in subdivision (a), the court may assess punitive damages against the plaintiff upon a determination by the court that the plaintiff's action was an action maintained by a person convicted of a felony against the person's victim, or the victim's heirs, relatives, estate, or personal representative, for injuries arising from the acts for which the person was convicted of a felony, and that the plaintiff is guilty of fraud, oppression, or malice in maintaining the action. [¶] (e) The liability imposed by this section is in addition to any other liability imposed by law for acts or omissions within the purview of this section." (Italics added.)

[30]See footnote 2, *ante.*
[31]See footnote 2, *ante.*

judgment under the anti-SLAPP statute to give an undertaking to stay enforcement of the portion of the judgment awarding reasonable attorneys fees and costs to the prevailing defendant under section 425.16, subdivision (c), will promote meritorious appeals, and will deter continued SLAPP litigation at the appellate level.

In sum, construing section 917.1(a)(1) together with the relevant provisions of sections 917.1 (subd. (d)) and 1033.5 (subds. (a)(10)(A), (c)(2) & (c)(5)), and considering the legislative intent underlying the anti-SLAPP statute with a view to promoting the general purpose of that statute, we hold that a SLAPP plaintiff's perfecting of an appeal from a judgment awarding attorney fees and costs to a prevailing SLAPP defendant under subdivision (c) of section 425.16 does not automatically stay enforcement of the judgment. To stay enforcement of such a judgment, the SLAPP plaintiff must give an appropriate appeal bond or undertaking under the money judgment exception to the automatic stay rule. Accordingly, Dowling's petition is denied.

## DISPOSITION

The judgment is affirmed and Dowling's petition for writ of supersedeas is denied. Zimmerman shall recover her attorney fees and costs on appeal as the prevailing defendant under subdivision (c) of section 425.16, in addition to her costs in the related writ proceeding. The cause is remanded for a determination by the court of the amount of reasonable attorney fees and costs Zimmerman shall recover from Dowling under the provisions of section 425.16, subdivision (c).

Benke, Acting P. J., and Huffman, J., concurred.