[No. D055532. Fourth Dist., Div. One. July 29, 2010.]

CHAPALA MANAGEMENT CORPORATION, Plaintiff and Respondent, v. THOMAS STANTON et al., Defendants and Appellants.

**[CERTIFIED FOR PARTIAL PUBLICATION*]**

---

*Pursuant to California Rules of Court, rule 8.1110, this opinion is certified for publication with the exception of parts I., II., III., IV., and V.

**COUNSEL**

Lynn & Fortune, Robert H. Lynn; Mugglebee & Mugglebee and Stephen T. Mugglebee for Defendants and Appellants.

Epsten Grinnell & Howell, Rian W. Jones and Carrie M. Timko for Plaintiff and Respondent.

**OPINION**

**O'ROURKE, J.**—Defendants and appellants Thomas Stanton and Donna Stanton replaced two windows in their condominium with "sandtone" colored windows after the condominium association, Chapala Management Corporation (Association), had denied their application for those improvements on grounds they were not an approved color. Association thereafter filed suit and, following a bench trial, obtained a judgment against the Stantons for injunctive and declaratory relief declaring them in violation of Association's amended and restated declaration of covenants, conditions and restrictions (CC&R's) and requiring them to modify or replace their windows under the approval of Association's architectural review committee (at times hereafter the ARC). The trial court ordered the Stantons to pay attorney fees and thereafter ordered them to post a bond or undertaking to stay the collection of the attorney fee award. The Stantons appealed from the judgment without filing an appeal bond or other undertaking.

On appeal from the judgment, the Stantons contend the trial court erred by (1) granting an injunction when Association had specific and adequate legal remedies under the CC&R's; (2) ignoring Civil Code requirements granting

defendants a hearing before Association's board of directors (the Board); (3) holding that the term "aesthetic" permits the architectural review committee to disregard provisions of the CC&R's as to window color; and (4) finding that the architectural review committee's actions were not arbitrary, capricious or discriminatory. The Stantons further appeal from the order awarding attorney fees, asking us to vacate the order if they prevail on appeal.

In their subsequently filed writ petition, the Stantons contend an undertaking is not required to stay an award of costs made in connection with a judgment for injunctive relief. They asked for an immediate stay of the order requiring that they post an undertaking. We issued the stay, ordered that the arguments in the petition and response be considered with this appeal, and deferred ruling on the petition until disposition of the appeal.

We affirm the judgment and postjudgment order awarding attorney fees. As we explain below, we dissolve the stay and grant the Stantons' petition for writ of supersedeas.

## FACTUAL AND PROCEDURAL BACKGROUND

The factual background is taken from the facts and evidence in the record and the trial court's statement of decision. We view the facts most favorable to the judgment under the principle requiring us to presume the lower court's judgment is correct, and draw all inferences and presumptions necessary to support it. (*In re Marriage of Arceneaux* (1990) 51 Cal.3d 1130, 1133 [275 Cal.Rptr. 797, 800 P.2d 1227]; *Ermoian v. Desert Hospital* (2007) 152 Cal.App.4th 475, 494 [61 Cal.Rptr.3d 754].) " 'Where [a trial court's] statement of decision sets forth the factual and legal basis for the decision, any conflict in the evidence or reasonable inferences to be drawn from the facts will be resolved in support of the determination of the trial court decision.' " (*In re Marriage of Ruelas* (2007) 154 Cal.App.4th 339, 342 [64 Cal.Rptr.3d 600].) If the statement of decision is ambiguous or omits material factual findings, we will infer any factual findings necessary to support the judgment. (*Ermoian v. Desert Hospital*, at p. 494.)[1]

---

[1] Before trial, the Stantons requested that the trial court issue a proposed statement of decision on numerous issues. Association submitted its own proposed statement of decision. After trial, the court issued an oral statement of decision. The Stantons thereafter objected to Association's proposed statement of decision on grounds it did not accurately reflect the complete record as read by the court. They also objected to the trial court's oral statement of decision on grounds it did not "explain the factual and legal basis for its decision as to each of the principal controverted issues at trial as previously requested by the Defendants; it is controverted by the evidence and testimony given during trial; and/or it is not supported by any evidence or testimony given at trial." The trial court overruled the Stantons' objections and on April 29, 2009, issued its written statement of decision. On appeal, the Stantons attack only the trial court's factual findings as to the arbitrary, capricious or discriminatory nature of

In December 2006, the Stantons, owners of a unit located in the Association, submitted to Association a series of applications seeking the architectural review committee's approval of exterior improvements consisting of the replacement of two casement windows on the south side of their unit, facing the common area. They sought to use windows that were "sandtone" in color.

Association's CC&R's, recorded in 1996, require that the location and plans and specifications of improvements to any unit's exterior be approved by Association's three-member architectural review committee.[2] The CC&R's state the "ARC shall review and approve or disapprove all plans submitted to it for any proposed improvement, alteration or addition, solely on the basis of aesthetic considerations and the overall benefit or detriment which would result to the immediate vicinity and the Project generally. The ARC shall take into consideration the aesthetic aspects of the architectural designs, placement of buildings, topography, landscaping, color schemes, exterior finishes and materials and similar features . . . ." (CC&R's, art. XV, § 11.)

Association utilizes a document entitled "Architectural and CC&R Guidelines for Homeowners" (Guidelines) stating that "[a]ll changes or additions either to the exterior of your Living Unit or to your Exclusive Use Area require ARC approval." In part, the Guidelines state: "No building or other structure or improvement, including landscaping, shall be erected, placed or altered upon any Exclusive Use Area or Common Area nor shall the exterior of any Living Unit be changed or altered unless the ARC has reviewed and approved the changes in accordance with the guidelines." (Boldface and italics omitted.) The Guidelines contain an "Architectural Concept" section that explains that Association's architecture is a homogenous Spanish style reminiscent of California early days, and minor architectural changes may be considered that maintain the integrity of that architectural style. According to

Association's acts. They do not raise any specific defects, omissions or ambiguities in the trial court's written statement of decision on appeal. Because the Stantons did not bring to the trial court's attention defects in its written statement of decision by filing specific and particular objections under Code of Civil Procedure section 634 prior to the entry of judgment (see *Ermoian v. Desert Hospital, supra,* 152 Cal.App.4th at pp. 497–498; see also *Golden Eagle Ins. Co. v. Foremost Ins. Co.* (1993) 20 Cal.App.4th 1372, 1380 [25 Cal.Rptr.2d 242]), we will apply the doctrine of implied findings and infer factual findings necessary to support the judgment. (*Ermoian,* at pp. 494–495, 498–500.)

[2] Article XV, section 2 of the CC&R's states in part: "No building or other structure or improvement, including, but not limited to, landscaping, shall be erected, placed or altered upon any Yard Exclusive Use Area or the exterior of any Living Unit until the location and the complete plans and specifications thereof (including the color scheme of each building, fence and/or wall to be erected) have been approved in writing by the ARC. The ARC shall provide guidelines for the submission of plans and specifications which may be amended by the ARC from time to time. Failure to comply with the requirements for ARC approval shall be deemed sufficient basis for the ARC to refuse to review the submission . . . . No alteration shall be made in the exterior color design or openings of any building or other construction unless written approval of said alteration shall have been obtained from the ARC. . . ."

the Guidelines, "[a]reas allowing the largest possibility for individual expression are the Exclusive Use Areas appurtenant to the rear of such Living Unit and intended for the exclusive use of its inhabitants. [¶] These areas are actually Common Areas and shall be landscaped and maintained by the home owner." (Boldface and italics omitted.) The CC&R's define the exclusive use areas.

Before January 2007, Association's architectural review committee had a policy of maintaining a dark shade of brown color for windows that generally faced the street within the community, other than the garage windows. The committee had a different policy with respect to windows that did not face the street. The Stantons were aware of this policy since at least 1999, when the existing architectural review committee denied their application to install sandtone-colored windows due to the color variation.

In January 2007, the members of the architectural review committee met with the Stantons at their property and explained that their window color was unacceptable. On January 31, 2007, Association advised the Stantons by letter that their application had been disapproved because, among other deficiencies, the window frame color specified on the application was incorrect. In February 2007, the Stantons submitted two additional applications again requesting approval of sandtone-colored windows.

The following month, Association's manager on the Board's behalf advised the Stantons that the architectural review committee had denied their application "because the casement windows must be brown in color." In April 2007, Thomas Stanton wrote to Association's legal counsel and, among other things, accused the architectural review committee of acting in an arbitrary and capricious manner in its color approvals. At the conclusion of the letter, he wrote, "New non-standard color windows will be installed in our home this week!" The Stantons thereafter installed the sandtone-colored windows.

In May 2007, Association offered to resolve the dispute with the Stantons through mediation in accordance with Civil Code section 1369.520. The Stantons declined mediation.

Association thereafter filed a verified complaint against the Stantons containing causes of action for declaratory and injunctive relief based on the Stantons' violation of the CC&R's. It sought a permanent injunction requiring the Stantons to modify their windows by painting them a color approved by the architectural review committee or, alternatively, requiring them to remove and replace the existing windows with windows in an approved color after submitting plans and specifications under the Guidelines and obtaining the committee's approval. It also sought a judicial declaration of the rights, duties

and obligations of the parties under the CC&R's pertaining to the Stantons' unit and an order directing them to comply with all other provisions of the CC&R's. Association prayed for costs and attorney fees.

The matter proceeded to a bench trial, after which the trial court issued a written statement of decision determining Association to be the prevailing party. The court made detailed legal and factual findings in part as follows:

"The Association has maintained a color scheme with approved and recommended colors for windows in the community, which is reflected in Exhibit 21. . . . [T]he Association's Architectural Guidelines . . . reference[] the general policy with respect to the ARC and the standards to be maintained within the community. . . . [¶] . . . [T]he color to be applied to the exterior surfaces of the building are included and controlled by both the CC&Rs and derivatively by the Architectural Guidelines . . . . [¶] . . . [¶]

". . . The windows on the front of the units in Chapala are generally referred to as 'casement windows,' all of which were stained and varnished a dark shade of brown upon the original construction of the project. The Association has, over the years, consistently required that the casement windows on the front, street-facing side of the units in Chapala be brown in color, ranging from a medium to dark brown depending on whether the windows were varnished wood, painted wood, or vinyl. . . .

". . . The color the Defendants installed on the Subject Property was a lighter, gray-based earth-tone color rather than a medium to dark brown that the Association had previously approved. This color is substantially different from the otherwise uniform look of the windows which had been installed in the community. Lighter colored windows have over the years been allowed by the Association for windows located in the rear or side of units. No such window colors have been ARC-approved in areas where the Defendants have installed their windows. On one residence, the Finneran home, there is a slightly lighter shade of brown that was approved. This approval was not so inconsistent with the prior policy to constitute any bar to the Stanton rejection by the ARC. [¶] . . . [¶]

". . . [T]he Association may validly permit for color approval differences between the generally front-facing doors and windows and those that generally face the rear and are contained in what has been described in the testimony and exhibits in this matter as the 'exclusive use common area.' These different standards, as applied to those generally-accepted areas, are neither arbitrary nor capricious, in fact or as applied. To the extent that the Finneran windows were approved in a lighter shade than what has been described as 'bison' brown, such prior approval is not such that the Stanton disapproval was arbitrary, capricious or discriminatory. . . .

"A presumption of reasonableness exists as to the enforcement of restrictions in common interest developments such as Chapala Management Corporation. . . . The provisions in the CC&Rs dealing with architectural approval are presumed reasonable. The Court finds that the architectural provisions included in Article XV, Section 2 of the CC&Rs do not violate any public policy, and are not internally arbitrary. The purpose of the CC&Rs [is] in part for enhancing and perfecting the value, desirability, and attractiveness of the property. The CC&Rs and the requirements contained therein are enforceable as to the residents of the Association, including the Defendants.

"The applicable provisions of the CC&Rs require that Defendants obtain the approval of the ARC before making any architectural modifications to the Subject Property. Defendants in this instance breached the CC&Rs by installing the sandtone windows at the Subject Property after they received express, written disapproval of their application from the ARC. Defendant Thomas Stanton testified that he knew at the time of the installation that he was violating the CC&Rs by what he did, but felt that he was violating them with what he considered to be good cause.

"The ARC acted within the scope and power granted by the CC&Rs in disapproving the Defendants' architectural application for the installation of the sandtone windows. The standard for the ARC's approval or disapproval of architectural application, as set forth in Article XV, Section 11 of the CC&Rs, requires the ARC to make those decisions on the basis of aesthetic considerations and the overall benefit or detriment which would result to the immediate vicinity of the Project, generally taking into consideration the aesthetic aspects of the color schemes. This does not mean, nor should it be interpreted to imply, that each decision of the ARC solely involves the neighbors in the immediate vicinity of the affected property, nor is a plebiscite intended on each and every disputed call that is made by the ARC.

"The disapproval in this instance constituted an extension of a longstanding architectural aesthetic color scheme as applied to the homes in the Association and was not arbitrary or capricious as applied to any portion of the community (including the Stanton home), nor did it violate any public policy. . . .

"Decisions made by an architectural committee to approve or deny architectural applications may be based on the subjective judgment of those entities as reasonably applied and as reviewed from time to time by the board of directors of an association. The ARC in this case was empowered to make decisions on architectural applications on the basis of aesthetic considerations. The ARC acted within its scope of discretion provided under the CC&Rs in disapproving the Defendants' application for sandtone windows

based on a long-standing color scheme that has been substantially followed throughout the existence of the Association.

". . . [T]he ARC completed a reasonable investigation by meeting with the Defendants to discuss the color of the windows, and by comparing the sandtone windows to the Association's paint standards for similarly situated windows in Chapala. . . . Exhibit 21 . . . was acknowledged in correspondence by Mr. Stanton to have been the color standards of the Association, of which he was in possession . . . and [of which he] had knowledge . . . . [T]he colors set forth in Exhibit 21 represent a reflection of the approved color standard with respect to garage doors, street-facing windows and other applicable structures within the community and served as a guide available to the homeowners for those colors that were considered appropriate for replacement windows, replacement garage doors and/or repainting existing structures in the community as necessary."

The court entered judgment in Association's favor. It ordered the Stantons to modify their sandtone windows by painting them a color approved by the ARC or alternatively to remove and replace them with windows of an approved color, after submitting plans and specifications to the ARC under its Guidelines and obtaining its approval. It granted Association the right to enter the property to modify the windows if the Stantons failed to comply with specified time deadlines for the above acts. It ordered Association to recover its reasonable attorney fees with interest and costs.

Thereafter, Association moved for an award of $83,027.50 in attorney fees and $4,298.72 in costs as the prevailing party in the matter. In part, it argued its action was one to enforce the CC&R's and obtain declaratory relief for the Stantons' breach of the CC&R's, and thus Civil Code section 1354 as well as article XIX, section 5 of the CC&R's[3] entitled it to recover its reasonable attorney fees. The Stantons opposed the motion on grounds Association was not entitled to fees under Civil Code section 1354 because its action was not one to enforce any specific provision of its governing documents. They further argued Association's action was at most a limited civil case because damages were well below $25,000, and thus it was controlled by Code of Civil Procedure section 1033, limiting Association's recovery to its actual cost of the filing fee and service of process. Finally, the Stantons argued Association did not demonstrate its claimed attorney fees were reasonable.

---

[3] Section 5 of article XIX of the CC&R's, entitled "Litigation," provides: "In the event the Association, Community Center, or any Owner shall commence litigation to enforce any of the covenants, conditions or restrictions herein contained, the prevailing party in such litigation shall be entitled to costs of suit and such attorney's fees as the Court may adjudge reasonable and proper. The 'prevailing party' shall be the party in whose favor a final judgment is entered."

The trial court granted Association's motion in part, awarding it $59,122.50 in attorney fees and $4,298.72 in costs. The court pointed out it had already ruled Association's action was one to enforce express provisions in its CC&R's, the action was not a limited civil case, as it contained a cause of action for injunctive relief, and the hourly rates of Association's counsel were reasonable. Association filed a motion for an undertaking to stay enforcement of the $63,421.22 judgment and the Stantons moved to stay all costs, including attorney fees, pending resolution of the appeal. The trial court tentatively granted the Association's motion, finding attorney fees were not an ordinary or routine cost such that an undertaking is required. It granted the Stantons' motion in part, staying collection of "ordinary" costs only. The Stantons filed a petition for writ of mandate, supersedeas or other appropriate relief, contending no undertaking was required and asking us to stay the trial court's order. We issued an immediate stay of the order requiring an undertaking and ordered that the writ be considered with the Stantons' appeal from the judgment and postjudgment order awarding attorney fees and costs.

## DISCUSSION

### I.–V.*

. . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . . .

### VI. *Petition for Writ of Supersedeas*

#### A. *Contentions*

By a petition alternatively seeking a writ of mandate, supersedeas or other appropriate relief,[8] the Stantons challenge the trial court's order requiring them to post a bond or undertaking to stay execution of the costs awarded in the underlying action, including the award of attorney fees in Association's favor. They contend that under Code of Civil Procedure section 916,[9] costs in injunctive relief actions are stayed on appeal. They maintain that both authorities cited by the trial court—*Bank of San Pedro v. Superior Court* (1992) 3 Cal.4th 797 [12 Cal.Rptr.2d 696, 838 P.2d 218] (*Bank of San Pedro*), and *Chamberlin v. Dale's R.V. Rentals, Inc.* (1986) 188 Cal.App.3d 356 [232 Cal.Rptr. 785] (*Chamberlin*)—involved money judgments and thus

---

*See footnote, *ante*, page 1532.

[8] "Supersedeas" is the appropriate remedy for a refusal to acknowledge the applicability of statutory provisions automatically staying the judgment while an appeal is pursued. (*Nielsen v. Stumbos* (1990) 226 Cal.App.3d 301, 303 [276 Cal.Rptr. 272].)

[9] All further statutory references are to the Code of Civil Procedure unless otherwise indicated.

the trial court misplaced reliance on them to hold that attorney fees are not ordinary or routine costs. They argue that in this case involving attorney fees awarded under the Davis-Stirling Common Interest Development Act enacted in 1985 (Civ. Code, § 1350), the trial court should have followed *Nielsen v. Stumbos, supra*, 226 Cal.App.3d 301.

In its opposition to the petition, Association contended the matter is governed by section 917.1, subdivision (a), which specifically requires an undertaking to stay a monetary award pending appeal. It maintained the trial court did not abuse its discretion by requiring an undertaking under its cited authorities. It further argued that this court in *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400 [103 Cal.Rptr.2d 174] (*Dowling*) and the Fourth Appellate District, Division Three in *Behniwal v. Mix* (2007) 147 Cal.App.4th 621 [54 Cal.Rptr.3d 427] have considered the conflict in authorities and concluded that *Bank of San Pedro, supra*, 3 Cal.4th 797 and *Chamberlin, supra*, 188 Cal.App.3d 356 are controlling on the issue of whether attorney fees are nonroutine costs requiring an undertaking. Though Association elected to concede this issue at oral argument, we will address it on the merits for the guidance of trial courts.

## B. *Legal Principles*

 Section 916, subdivision (a), provides in part: "(a) Except as provided in Sections 917.1 to 917.9, inclusive, and in Section 116.810, the perfecting of an appeal stays proceedings in the trial court upon the judgment or order appealed from or upon the matters embraced therein or affected thereby, including enforcement of the judgment or order . . . ." "The purpose of the automatic stay rule is 'to protect the appellate court's jurisdiction by preserving the status quo until the appeal is decided. The rule prevents the trial court from rendering an appeal futile by altering the appealed judgment or order by conducting other proceedings that may affect it.'" (*Dowling, supra*, 85 Cal.App.4th at p. 1428.)

Section 917.1, subdivision (a)(2) provides an exception to the stay otherwise imposed by section 916. (*Dowling, supra*, 85 Cal.App.4th at p. 1428 [referring to exception as the "money judgment exception"].) Under that provision, an appeal will not stay the enforcement of a judgment or order, and thus an undertaking is required, if the judgment or order is for " '[m]oney or the payment of money, whether consisting of a special fund or not, and whether payable by the appellant or other party to the action.'" (*Id.* at p. 1429, italics omitted, quoting § 917.1, subd. (a)(1).)

Section 917.1 contains another exception in subdivision (d), specifying that no undertaking is required for a judgment consisting of only costs awarded

under section 1021 et seq. (*Dowling, supra,* 85 Cal.App.4th at p. 1430, fn. 5, quoting *Gallardo v. Specialty Restaurants Corp.* (2000) 84 Cal.App.4th 463, 469 [100 Cal.Rptr.2d 884].) In *Dowling,* this court pointed out that section 917.1, subdivision (d) does not expressly refer to attorney fee awards, but a commentator suggests that " 'a judgment solely for *attorney fees* [(or § 1021 et seq. costs and attorney fees)], when awarded pursuant to contract, *statute* or "law," should likewise be *stayed automatically on appeal* . . . because such fee awards are expressly denominated by [section] 1021 et seq. as recoverable *costs of suit.*' " (*Dowling,* at p. 1430, quoting Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2009) ¶ 7:133, p. 7-34.1 (rev. # 1, 2009), citing § 1033.5, subds. (a)(10)(A), (B), (C) & (c)(5).)[10]

In *Bank of San Pedro, supra,* 3 Cal.4th 797, the California Supreme Court explained the long-standing rule automatically staying costs awards pending appeal: "Costs of suit are awarded to the prevailing party in nearly every civil action or proceeding. This reality arises from section 1032, subdivision (b), which states, 'Except as otherwise expressly provided by statute, a prevailing party is entitled *as a matter of right* to recover costs in any action or proceeding.' (Italics added.) We relied on this circumstance in construing the statutory antecedent of section 917.1 (former section 942): 'A judgment for costs is not the judgment directing the payment of money contemplated by section 942. If such were the fact, a stay bond would be required in almost every conceivable case, when, to the contrary, it is only required in the four cases covered by sections 942 to 945 of the code . . . .' [Citation.] In other words, if a judgment for costs awarded under section 1032 were a money judgment within the meaning of section 917.1, virtually every judgment would be within the scope of section 917.1, and an undertaking

---

[10] "Section 1033.5 provides for the recovery of specified costs under section 1032. Subdivisions (a)(10)(B) and (c)(5) of that section, as amended by Statutes 1993, chapter 456, section 15, pages 2537–[2538], provide in part: '(a) The following items are allowable as costs under Section 1032: [¶] . . . [¶] (10) *Attorney fees, when authorized by any of the following:* [¶] (A) Contract. [¶] (B) *Statute.* [¶] (C) *Law.* [¶] . . . [¶] (c) Any award of costs shall be subject to the following: [¶] . . . [¶] (5) *When any statute of this state refers to the award of "costs and attorney's fees," attorney's fees are an item and component of the costs to be awarded and are allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a).* Any claim not based upon the court's established schedule of attorney's fees for actions on a contract shall bear the burden of proof. Attorney's fees allowable as costs pursuant to subparagraph (B) of paragraph (10) of subdivision (a) may be fixed as follows: (A) upon a noticed motion, (B) at the time a statement of decision is rendered, (C) upon application supported by affidavit made concurrently with a claim for other costs, or (D) upon entry of default judgment. Attorney's fees allowable as costs pursuant to *subparagraph (A) or (C) of paragraph (10)* of subdivision (a) shall be fixed either upon a noticed motion or upon entry of a default judgment, unless otherwise provided by stipulation of the parties. [¶] Attorney's fees awarded pursuant to Section 1717 of the Civil Code are allowable costs under Section 1032 as authorized by subparagraph (A) of paragraph (10) of subdivision (a).' " (*Dowling, supra,* 85 Cal.App.4th at p. 1431, fn. omitted.)

would be required to stay every judgment pending appeal. The exception in section 917.1 to the automatic stay provision of section 916 would cease to be an exception; it would subsume the general rule. Such a result could not have been consistent with the Legislature's intent. We therefore have held that a judgment for costs alone was not a judgment directing the payment of money within the meaning of former section 942 (now section 917.1, subdivision (a)) and was therefore stayed without the need for an undertaking. [Citations.] This rule has become well established." (*Bank of San Pedro, supra*, 3 Cal.4th at pp. 800–801.) The high court emphasized that in each of its prior decisions on this point, however, "the costs were of a *routine nature, such as those awarded as a matter of right under section 1032.*" (*Bank of San Pedro*, at p. 801, italics added.)

Thus, in framing the issue, which there involved an award of expert witness fees under section 998, subdivision (c), the court looked to whether the costs at issue were routine or not routine, finding them to be nonroutine and thus not automatically stayed without an undertaking. (*Bank of San Pedro, supra*, 3 Cal.4th at pp. 803–805.)[11] The court reasoned the expert witness fees were a nonroutine cost because (1) a *losing* defendant could recover its costs under the statute, and (2) an award of expert witness fees is "always within the trial court's discretion" in contrast to costs awarded under section 1032, which are awarded " 'as a matter of right.' " (*Bank of San Pedro*, at p. 803.)

---

[11] Both *Chamberlin, supra*, 188 Cal.App.3d at pages 360–362 and *Nielsen v. Stumbos, supra*, 226 Cal.App.3d at page 305 were decided before *Bank of San Pedro*, and thus neither court undertook an analysis as to whether the costs awarded were routine or nonroutine. In *Chamberlin*, this court construed section 917.1 and held that in determining the amount of an undertaking, the trial court must consider the amount of a Civil Code section 1717, subdivision (a) attorney fee award. The *Bank of San Pedro* court described *Chamberlin*'s holding: "Because the case was decided before the 1986 amendment to section 917.1 (which requires the inclusion of costs in a damages judgment when computing the amount of the undertaking), the question was whether the award of attorney fees under Civil Code section 1717 had to be included within the judgment in computing the amount of the undertaking. The court concluded the then-existing rule that costs were *not* included for such purpose did not extend to the award of attorney fees. 'Unlike the costs involved in the early cases, such attorney fees are in the nature of a directly litigated issue rather than merely incidental to the judgment. Further, attorney fees are not the type of costs involved in virtually every case. Attorney fees are awarded only in limited situations.' " (*Bank of San Pedro, supra*, 3 Cal.4th at p. 802, quoting *Chamberlin*, at p. 362.) In *Nielsen*, the Third District Court of Appeal distinguished *Chamberlin* to hold that "[t]he language of [Civil Code] section 1717 and recent legislation affecting related statutes leads us to conclude that contractual attorney fees awarded a party who recovers no money damages are to be treated as any other incidental cost of litigation for purposes of the automatic stay provisions of . . . section 916. Accordingly, no undertaking need be posted by the plaintiff, the appellant here." The *Nielsen* court observed that *Chamberlin* involved a judgment for not only attorney fees, but also money damages. (*Nielsen*, at p. 305.) *Nielsen* held the automatic stay applied when there was no money judgment, only an award of attorney fees and costs. (*Ibid.*)

This court applied the above statutes and the *Bank of San Pedro* "routine costs" standard in *Dowling, supra,* 85 Cal.App.4th 1400, to decide whether an appeal bond or undertaking was required to stay the enforcement of a judgment for reasonable attorney fees and costs awarded to a prevailing defendant under section 425.16, commonly known as the anti-SLAPP (strategic lawsuit against public participation) statute. (*Dowling,* at p. 1432.) We held under the express language of section 917.1, subdivision (a)(1), that such a judgment was unquestionably a judgment for payment of money so as to require an undertaking to stay enforcement of the judgment. (*Dowling,* at p. 1432.) Looking to the operation of the anti-SLAPP statute, this court reasoned the judgment "cannot be construed as an award of routine or incidental costs subject to the automatic stay rule" under subdivision (d) of section 917.1. (*Dowling,* at p. 1432.) There were two basic reasons for our holding. First, we held the statutory award under the anti-SLAPP statute is not routine because the award is not reciprocal: the anti-SLAPP statute authorized only the SLAPP *defendant* to recover reasonable attorney fees after prevailing on a special motion to strike under the statute; a prevailing *plaintiff* is not entitled to recover fees and costs unless he or she shows the defendant's motion was frivolous or solely intended to cause unnecessary delay. (*Dowling,* at pp. 1432–1433.) Second, we looked to the legislative intent "to provide SLAPP defendants an efficient tool to quickly and inexpensively unmask and defeat SLAPP suits." (*Id.* at p. 1433.) We were "persuaded the Legislature intended to deter SLAPP litigation not only at the trial court level, but also in the appellate courts in order to protect the proper exercise of First Amendment rights. Requiring a SLAPP plaintiff who appeals from an adverse judgment under the anti-SLAPP statute to give an undertaking to stay enforcement of the portion of the judgment awarding reasonable attorneys fees and costs to the prevailing defendant under section 425.16, subdivision (c), will promote meritorious appeals, and will deter continued SLAPP litigation at the appellate level." (*Dowling,* at pp. 1433–1434.)

## C. *Standard of Review and Analysis*

The question at hand is whether, looking to the operation of the applicable statutes and the Legislature's intent (*Bank of San Pedro, supra,* 3 Cal.4th at pp. 800, 803–804), the trial court's judgment for attorney fees and costs here is a judgment for " 'money or the payment of money' " under section 917.1, subdivision (a)(1) or whether it is a judgment " 'solely for costs awarded under Chapter 6 (commencing with Section 1021) of Title 14' " within the meaning of section 917.1, subdivision (d). (*Dowling, supra,* 85 Cal.App.4th at p. 1432.) The answer requires us to decide whether the costs awarded to Association here were routine or nonroutine costs. (*Bank of San Pedro,* at pp. 803–804.)

■ Here, we conclude Association's judgment for attorney fees is automatically stayed pending any appeal on grounds the attorney fees awarded are a routine or incidental item of costs, awarded as a matter of right to the prevailing party. Association prayed for recovery of its attorney fees "pursuant to statute and contract." As recounted above, the trial court found Association to be the prevailing party, and, determining that its action was one to enforce express provisions in the CC&R's, awarded it attorney fees and costs under Civil Code section 1354. Civil Code section 1354, subdivision (c), provides: "In an action to enforce the governing documents, the prevailing party shall be awarded reasonable attorney's fees and costs." Under section 1033.5, when attorney fees are authorized under "any" California statute that refers to the award of " 'costs and attorney's fees,' " such fees are recoverable under section 1032 as "an item and component of the costs . . . ." (§ 1033.5, subd. (c)(5); see *Dowling, supra,* 85 Cal.App.4th at p. 1433; *Ziello v. Superior Court* (1999) 75 Cal.App.4th 651, 655, fn. 2 [89 Cal.Rptr.2d 398] ["[s]ection 1033.5, also part of chapter 6, includes attorney's fees authorized by a contract as an item of costs (subd. (a)(10)(A))"].)

■ Unlike the attorney fee award under the anti-SLAPP statute in *Dowling, supra,* 85 Cal.App.4th 1400 or the section 998 expert witness fee award in *Bank of San Pedro, supra,* 3 Cal.4th 797, the statutory award of attorney fees under Civil Code section 1354 is expressly awarded to the *prevailing party* (i.e., it is reciprocal); such attorney fees are awarded as a matter of right, and there is no discretion afforded to the trial court in granting or denying such fees, other than as to their reasonableness and amount. In our view, if we were to characterize the attorney fee award here as a judgment in substance "directing the payment of money," we would write out of section 917.1, subdivision (d) any attorney fees awarded as costs under section 1032. The Legislature has not provided for such an exception, and we will not rewrite the statute to create it. (*California Teachers Assn. v. Governing Bd. of Rialto Unified School Dist.* (1997) 14 Cal.4th 627, 633 [59 Cal.Rptr.2d 671, 927 P.2d 1175] [" 'This court has no power to rewrite the statute so as to make it conform to a presumed intention which is not expressed.' "].) Thus the Stantons' appeal from the costs and fee order stayed its enforcement under section 916. "Since the appeal is limited to the order awarding costs, including attorney's fees, it is within the exclusion of the final provision of section 917.1, subdivision (d). As we have discussed, that provision eliminates the requirement of an undertaking when the appeal is solely from an award of costs." (*Ziello v. Superior Court, supra,* 75 Cal.App.4th at p. 655.)

We decline to read *Bank of San Pedro, supra,* 3 Cal.4th 797 as equating all attorney fee awards with expert witness fees, as did the court in *Behniwal v. Mix, supra,* 147 Cal.App.4th at pages 633–634 and footnote 8. The high court's analysis in *Bank of San Pedro* was directed solely at the expert fees awarded under section 998, and its reasoning was based on the operation of

that statute. Further, *Behniwal* conceded that its discussion of the issue was not for the purpose of squarely deciding whether or not an undertaking was required, but only relevant to demonstrate the flaws in one of the parties' arguments. (*Behniwal, supra*, 147 Cal.App.4th at p. 634.) We do not follow *Behniwal* to the extent its holding can be read to encompass a judgment solely for costs and attorney fees awarded to the prevailing party under Civil Code section 1354.

In sum, under section 916, subdivision (a) the trial court should have granted the stay of execution of the judgment in its entirety.

## DISPOSITION

The judgment and postjudgment orders are affirmed. The temporary stay issued on October 29, 2009, is vacated. The petition for writ of supersedeas staying enforcement of the judgment for attorney fees and other costs is granted. The parties shall bear their own costs on appeal.

Huffman, Acting P. J., and McIntyre, J., concurred.