Filed 11/5/15  Berryhill v. Burton CA2/5

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION FIVE

| | |
|---|---|
| IRENE BERRYHILL et al., | B260683 |
| Plaintiffs and Respondents, | (Los Angeles County Super. Ct. No. BC553674) |
| v. | |
| JAMES BURTON et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Los Angeles, Ruth A. Kwan, Judge.  Affirmed.

Schorr Law, Zachary D. Schorr, Rachael L. Shinoskie, Stephanie C. Goldstein, for Defendants and Appellants.

LA SuperLawyers Inc. and William W. Bloch, for Plaintiffs and Respondents.

_____

Defendants and appellants James and Ericka Burton appeal from the trial court's order denying their special motion to strike the fifth cause of action of plaintiffs and respondents Irene Berryhill and Aneka Braxton's complaint under the anti-SLAPP[1] statute, Code of Civil Procedure section 425.16.[2] The fifth cause of action alleges civil extortion on the basis of a cease and desist letter (Letter) defendants sent to Berryhill, purportedly threatening to criminally prosecute plaintiffs if they continued their efforts to recover their interest in real property that defendants claim to own.

We affirm the trial court's order.

## FACTS AND PROCEDURAL HISTORY

On June 1, 1995, plaintiffs purchased a single family home located at 3669 Kensley Drive, Inglewood, California, in Los Angeles County (Property). Berryhill obtained a loan secured by a first deed of trust in favor of the lender, J.P. Morgan Chase Bank, N.A. (Chase). In March of 2014, plaintiffs listed the Property for sale by owner. Berryhill informed defendants, with whom plaintiffs were friends, that plaintiffs had listed the Property for sale. Defendants expressed an interest in purchasing the Property, and the parties began discussing terms. The parties disagree as to whether an agreement was reached. Although its validity is disputed, plaintiffs and defendants agree that plaintiffs signed a quitclaim deed to the house on May 12, 2014. Defendants began construction on the Property without plaintiffs' permission sometime in May. The

---

[1] "SLAPP is an acronym for 'strategic lawsuit against public participation.'" (*Jarrow Formulas, Inc. v. LaMarche* (2003) 31 Cal.4th 728, 732, fn. 1.) An order granting or denying a special motion to strike under Code of Civil Procedure section 425.16 is appealable. (Code Civ. Proc., § 904.1, subd. (a)(13).)

[2] All further statutory references are to the Code of Civil Procedure, unless otherwise stated.

quitclaim deed was notarized in July, with Debbie Montiero, a friend of both parties, acting as the notary. Defendants recorded the quitclaim deed on July 15, 2014.

On or about July 27, 2014, James Burton sent the Letter to Berryhill, stating:

"You have threatened me, my family, our mutual friend (Debbie Montiero aka Debbie Everage), my credit, my job, Ericka's retirement account, broke [*sic*] into our house, change [*sic*] the locks without our permission, interfered with the workers at our house . . . continually harassed and extorted us.

"I recently met with officials at the Inglewood Police Department, City Attorney's Office (Criminal Division) and District Attorney's Office to discuss evidence regarding the following crimes: [¶] Criminal Trespass[,] CA Penal Code Section § 422P[,] Penalty up to 16 months in prison[;] [¶] Vandalism[,] CA Penal Code Section § 594PC[,] Penalty up to 1 yr in jail[;] [¶] Burglary[,] CA Penal Code Section § 459PC[,] Penalty up to 6 yrs in prison[; and] [¶] Extortion[,] CA Penal Code Sections § 518PC-527PC[,] Penalty up to 4 yrs in prison[.]

"The conclusion of the meetings were [*sic*] if we are willing to press charges against you for the crimes listed above the Police are willing to make an arrest and the District Attorney's Office is willing to prosecute. Extortion is also a Federal Crime which can be charged separately. Additionally, Aneka may face charges as an accessory.

"Irene Berryhill and Aneka Braxton you are hereby ordered to immediately Cease and Desist all communication with James Burton, Ericka Burton and Riley Burton, as well as, Debbie Montiero (aka Debbie Everage).

"You are further ordered to stop extorting, harassing, threatening, libeling, slandering James Burton, Ericka Burton and Riley Burton, as well as, Debbie Montiero (aka Debbie Everage) and interfering with the contractors and workers at 3669 Kensley Dr. Inglewood, CA 90305.

"We have performed all of our obligations under the original contract and only contract that we all agreed to:

"1. We gave you $25,000 down when escrow open [*sic*] (which you cashed)

3

"2. We assumed the obligation for paying your mortgage (starting July 15, 2014) (which you cashed)

"3. We gave you the final down payment of $8,105 ($10,000 - $1,895 toward closing costs) (which you cashed)

"You are hereby notified that under our assumption agreement you are no longer required to make payments to Chase as we have assumed responsibility for making those payments (as of July 15, 2014 which you accepted). Any payments that you make toward the mortgage that we have assumed responsibility for will be considered a gift and will not be reimbursed.

"If you continue to extort, harass, threaten, libel, slander, or interfere with us, or Debbie Montiero (aka Debbie Everage) or any of the contractors or workers we will be forced to contact the authorities and press charges."

On August 5, 2014, plaintiffs filed a complaint against defendants for quiet title, intentional misrepresentation – fraud, negligent misrepresentation, negligence, civil extortion, intentional infliction of emotional distress, cancellation of instruments, and declaratory relief.[3] The quitclaim deed and the Letter were attached. Plaintiffs' civil extortion claim was based entirely on the Letter.

On September 23, 2014, defendants filed a special motion to strike the fifth cause of action for civil extortion pursuant to section 425.16, attaching declarations of James Burton, Ericka Burton, and counsel Zachary Schorr. Defendants argued that the civil extortion claim arose out of activity protected under section 425.16, subdivision (e), and that plaintiffs could not establish a probability that they would prevail on the claim. Defendants sought attorney fees in connection with the motion to strike.

In their declarations, defendants stated: ". . . the Berryhill Plaintiffs began interfering with our ownership of the Property in an attempt to force us to reconvey the Property. These actions included, but were not limited to, sending us threatening text

---

[3] Debbie Monteiro and Chase are also named defendants, but are not parties to this appeal.

4

messages to [*sic*], trespassing on the Property, changing the locks without our permission, and interfering with our construction workers' ability to do [*sic*] complete the renovation of the Property. In addition, every time we attempted to contact the Berryhill Plaintiffs to resolve the issues regarding the transfer of the Property, the Berryhill Plaintiffs threatened legal action. [¶] [¶] In a last ditch effort to resolve the dispute without the intervention of legal counsel or litigation, on July 27, 2014, I sent a letter to Irene Berryhill requesting her to cease and desist her unlawful interference with the Burtons' property rights (the "Cease and Desist Letter"). A true copy of the Cease and Desist Letter is attached . . . . In the Cease and Desist Letter, I requested Irene Berryhill to cease interfering with the Burtons property rights in the Property. Specifically the Cease and Desist Letter: (a) advises Irene Berryhill that the Burtons have contacted the police regarding her interference with their ownership of the Property; (b) requests Irene Berryhill to stop interfering with the Burtons ownership of the Property; and (c) advises Irene Berryhill that if she does not stop interfering with the Burtons ownership of the Property, we will be forced to press charges. The Cease and Desist Letter also confirmed that Ericka Burton and I had assumed the Loan and that we had performed all of [*sic*] their obligations under the Agreement. At no point in the letter did I demand payment or property in exchange for not pressing charges." Schorr and defendants declared that defendants retained Schorr in connection with the dispute over the Property on July 23, 2014.

On October 9, 2014, plaintiffs filed an opposition to the special motion to strike, attaching the declaration of Berryhill, the quitclaim deed, a letter from Berryhill to defendants dated July 28, 2014, and the Letter. Relying on *Flatley v. Mauro* (2006) 39 Cal.4th 299, 326 (*Flatley*), plaintiffs argued that the Letter constituted extortion as a matter of law, which was not protected petitioning activity under section 425.16. Alternately, they argued that they could demonstrate a probability success on their civil extortion cause of action. Plaintiffs also asserted defendants were not entitled to attorneys fees. They requested attorney fees and costs.

5

Berryhill's declaration stated, in pertinent part: ". . . [O]n or about July 28, 2014, … Defendant Burton wrote to me, and I received the letter . . . which I will call the 'Threat Letter.' The Threat Letter clearly threatened me and my daughter with criminal prosecution, if we did not stop efforts to recover our interest in the Property and to protect our rights, and was also written to stop my efforts to discuss this issue with the crooked notary, Ms. Debbie Monteiro. My head swam when I first read all of the criminal charges Mr. Burton was threatening me with. [¶] The letter repeated threats of my daughter and I facing years in prison for criminal charges. This letter was extremely upsetting to me, and put me in fear of possible arrest or prosecution."

On October 16, 2014, defendants replied to the opposition to the special motion to strike, refuting plaintiff's argument that the Letter constituted extortion as a matter of law. On October 20, 2014, plaintiffs filed a supplemental brief citing new case authority, *Stenehjem v. Sareen* (2014) 226 Cal.App.4th 1405, in support of its argument that a prelitigation demand for money or relinquishing claims in property coupled with a threat of criminal prosecution is extortion as a matter of law, and not entitled to anti-SLAPP protection.

In a minute order dated October 23, 2014, the trial court adopted its tentative ruling, denying defendant's special motion to strike. The trial court concluded the illegality exception to anti-SLAPP protection under section 425.16 set forth in *Flatley*, *supra*, 39 Cal.4th at p. 326, applied to the fifth cause of action, because the gravamen of the claim was that "Defendants threatened Plaintiffs with criminal prosecution if Plaintiffs did not stop efforts to recover their interest in the subject property and protect their rights." The court ruled: "In the Letter, J. Burton made it clear the police were willing to make arrests and the District Attorney's Office was willing to prosecute Berryhill for criminal trespass, vandalism, burglary, and extortion. J. Burton also indicated 'Aneka may face charges as an accessory.' Moreover, J. Burton threatened to 'contact the authorities and press charges' if Plaintiffs continued to 'extort, harass, threaten, libel, slander, or interfere with' Defendants, Debbie Montiero, and any of Defendant's contractors or workers. In essence, Defendants threatened to press criminal

6

charges against Plaintiffs *if they did not give up any property rights (Plaintiffs believed they had) in the subject property . . . .* Defendants declared Plaintiffs interfered with their ownership of the property by, among other things, trespassing on the property, changing the locks without permission, an [*sic*] interfering with their construction workers' ability to complete renovation of the property and the acts of interference were done *in an effort to force defendants to reconvey the property*. Additionally, Defendants declared the 'Letter' 'advises Irene Berryhill that the Burtons have contacted the police regarding her interference with their ownership of the Property,' 'requests Irene Berryhill to stop interfering with the Burton's ownership of the Property' and 'advises Irene Berryhill that if she does not stop interfering with the Burton's ownership of the Property' they would be 'forced to press charges.' There can be no dispute Defendants threatened to file charges if Plaintiffs did not give up any rights they have in the property (i.e. by not interfering with *Defendants'* property rights). [¶] Based on the forgoing, Defendant's special motion to strike is denied." The trial court also stated that in light of its ruling it would not reach the question of whether plaintiffs' cause of action had a probability of prevailing under the second prong of the anti-SLAPP analysis. The court denied defendants' request for attorney fees, but did not address plaintiffs' requests for costs and fees.

Defendants timely appealed.

## DISCUSSION

Defendants argue the trial court erred in denying the special motion to strike. They contend plaintiffs' claim arose from statements "made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law" under section 425.16, subdivision (e)(2), and is therefore subject to a special motion to strike. Defendants further maintain that plaintiffs cannot establish a probability that their civil extortion claim will prevail under the second prong of the anti-SLAPP analysis because the Letter is subject to the litigation privilege

7

under Civil Code section 47, subdivision (b). They urge reversal of the trial court's order with directions to the trial court to award reasonable attorney fees.

Plaintiffs respond that the trial court correctly determined the Letter was extortionate and therefore not protected under the anti-SLAPP statute. They argue that even if the Letter was not illegal as a matter of law, they have established a probability of prevailing on their claim. Plaintiffs assert defendants' special motion to strike was frivolous, and request an order to the trial court to make an award of attorney fees in their favor pursuant to section 425.16, subdivision (c).

We conclude that: (1) the evidence does not conclusively establish defendants' petitioning activity was illegal as a matter of law and therefore unprotected by the anti-SLAPP statute; and (2) defendants have made a prima facie showing that the fifth cause of action arose from their petitioning activity, which is protected activity under section 425.16. Defendants have satisfied the first prong of the anti-SLAPP analysis; however, there are triable issues of fact regarding whether the litigation privilege bars plaintiffs from establishing that they have a probability of prevailing on their claim under the second prong, and whether plaintiffs have otherwise established a probability of prevailing on the merits of their civil extortion claim. Accordingly, we affirm the trial court's order denying defendants' special motion to strike.

*Relevant Law*

"A SLAPP suit is a meritless lawsuit 'filed primarily to chill the defendant's exercise of First Amendment rights.' [Citation.]" (*Paul v. Friedman* (2002) 95 Cal.App.4th 853, 861.) The Legislature has declared that "it is in the public interest to encourage continued participation in matters of public significance, and . . . this participation should not be chilled through abuse of the judicial process." (§ 425.16, subd. (a).) To this end, the Legislature enacted section 425.16, subdivision (b)(1), which provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States

8

Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." "The trial court engages in a two-step process to determine whether to grant or deny a section 425.16 motion to strike. [Citation.] The court first decides whether the defendant has made a threshold showing that the acts at issue arose from protected activity. [Citations.] Once the defendant meets this burden, then the court determines whether the plaintiff has demonstrated a probability that he or she will prevail on the claim. [Citation.] On appeal, we independently review whether section 425.16 applies and whether the plaintiff has a probability of prevailing on the merits. [Citations.]" (*Summerfield v. Randolph* (2011) 201 Cal.App.4th 127, 135.)

In deciding whether the defendant has met the "arising from" requirement and whether plaintiff has met the probability of prevailing requirement, we consider "the pleadings, and supporting and opposing affidavits stating the facts upon which the liability or defense is based." (§ 425.16, subd. (b)(2); *Oasis West Realty, LLC v. Goldman* (2011) 51 Cal.4th 811, 820; *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 79 (*Cotati*).) In doing so, "'we neither "weigh credibility [nor] compare the weight of the evidence. Rather, . . . [we] accept as true the evidence favorable to the plaintiff [citation] and evaluate the defendant's evidence only to determine if it has defeated that submitted by the plaintiff as a matter of law." [Citation.]' [Citation.]" (*Flatley*, *supra*, 39 Cal.4th at p. 326.)

*Analysis*

**Defendants' Letter is Protected Activity**

A defendant satisfies the first prong of the anti-SLAPP statute if he or she makes a prima facie showing that the plaintiff's cause of action "arises from" an act of the defendant's in furtherance of the defendant's right of petition or free speech. (*Cotati*,

9

*supra*, 29 Cal.4th at p. 78; *Dowling v. Zimmerman* (2001) 85 Cal.App.4th 1400, 1417.) To prevail on this prong, the defendant does not have to prove the validity of his or her petitioning or speech activity. (*Flatley*, *supra*, 39 Cal.4th at p. 319.) "'A defendant meets this burden by demonstrating that the act underlying the plaintiff's cause fits one of the categories spelled out in section 425.16, subdivision (e) . . . .' [Citations.]" (*Cotati*, *supra*, at p. 78.) Section 425.16, subdivision (e) provides: "[An] 'act in furtherance of a person's right of petition or free speech . . . in connection with a public issue'" includes, among other categories, "(2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law." Courts have construed the anti-SLAPP statute broadly, holding it applicable in numerous situations where the defendants were not engaged in formal communications but the communications were nonetheless "made in connection with issues under consideration or review . . . [in an] official proceeding authorized by law" pursuant to section 425.16, subdivision (e)(2). (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1115 (*Briggs*).) Communications preparatory to or made in anticipation of a court action are within the protection of section 425.16. (*Digerati Holdings, LLC v. Young Money Entertainment, LLC* (2011) 194 Cal.App.4th 873, 887 (*Digerati Holdings*); *Briggs*, *supra*, at p. 1115.) A prelitigation statement comes within clause (1) or (2) of section 425.16, subdivision (e) "if the statement '"concern[s] the subject of the dispute" and is made "in anticipation of litigation 'contemplated in good faith and under serious consideration'"' [citation].' [Citations.]" (*Digerati Holdings*, *supra*, at p. 887.)

Here, the Letter clearly concerns the subject of the dispute. It addresses plaintiffs' allegedly criminal activity in interference with defendants' rights to the Property, and advises plaintiffs that defendants have assumed the mortgage for the Property. Defendants declared they made efforts to discuss the dispute with plaintiffs to no avail. They retained a lawyer in connection with the dispute just prior to writing the Letter, and considered the Letter to be a "last ditch effort" at resolution prior to bringing suit. Plaintiffs filed the complaint within two weeks of receiving the Letter. Berryhill's

10

declaration attests to her personal view of the circumstances, but offers no additional facts to bolster her beliefs. (*People v. Fox* (1958) 157 Cal.App.2d 426, 430 [guilt on extortion charge is established through alleged perpetrator's intent, not through effect on victim].) Defendants' declarations support their assertion that the Letter was written in anticipation of litigation contemplated in good faith and under consideration. We conclude they have made a prima facie showing that the fifth cause of action for civil extortion, which was based solely on the Letter, arose from protected petitioning activity.

Although it is not disputed that a demand letter will generally be considered protected petitioning activity, in this case the court found, and plaintiffs maintain, that the Letter constituted illegal extortion as a matter of law, undeserving of anti-SLAPP protection pursuant to the exception set forth in *Flatley*, *supra*, 39 Cal.4th at pages 325-333. We disagree. As we will discuss, the *Flatley* exception is narrow, and does not extend to the circumstances of this case.

The defendant in *Flatley* was an attorney who conceded sending a letter and making several phone calls to the plaintiff demanding "a seven-figure payment" and threatening litigation and public exposure of a rape and other alleged crimes if the demand was not met. (*Flatley*, *supra*, 39 Cal.4th at p. 305.) The parties agreed as to the substance of the letter and phone calls; however, the plaintiff asserted the communications were criminal extortion, while the defendant argued the communications were protected because they constituted a prelitigation settlement offer. (*Id.* at pp. 305-306.) *Flatley* held that the defendant's motion failed under the first prong of the anti-SLAPP analysis because there was uncontroverted evidence that the defendant's actions constituted illegal extortion not protected under section 425.16. (*Id.* at pp. 325-333.)

In reaching its conclusion, the *Flatley* court relied on *Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 (*Paul*), a case in which the defendants admitted money-laundering, but argued that their laundering of campaign contributions was protected under section 425.16 because they were acting in furtherance of their constitutional right to free speech. (*Id.* at pp. 1361-1362.) *Paul* carved out a narrow exception to the anti-SLAPP statute's protections in this circumstance, reasoning that "section 425.16, by its

11

express terms, does not apply to any activity that can conceivably be characterized as being "'in furtherance'" of a defendant's protected speech or petition rights if, as a matter of law, that activity was illegal and by reason of the illegality not constitutionally protected. (*Paul, supra,* 85 Cal.App.4th at p. 1367.)" (*Flatley*, *supra*, at p. 316.) *Flatley* agreed with the reasoning of *Paul* that protecting activity illegal as a matter of law would be inconsistent with the purpose of section 425.16, because illegal activity is not a valid activity undertaken in the furtherance of free speech. (*Id*. at p. 317.) The *Flatley* court opined that "it would eviscerate the first step of the two-step inquiry set forth in the statute if the defendant's mere assertion that his underlying activity was constitutionally protected sufficed to shift the burden to the plaintiff to establish a probability of prevailing where it could be conclusively shown that the defendant's underlying activity was illegal and not constitutionally protected." (*Ibid*.)

*Flatley* held that "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but *either the defendant concedes, or the evidence conclusively establishes*, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action. In reaching this conclusion, we emphasize that the question of whether the defendant's underlying conduct was illegal as a matter of law is preliminary, and unrelated to the second prong question of whether the plaintiff has demonstrated a probability of prevailing, and the showing required to establish conduct illegal as a matter of law—*either through defendant's concession or by uncontroverted and conclusive evidence*—is not the same showing as the plaintiff's second prong showing of probability of prevailing." (*Flatley*, *supra*, 39 Cal.4th at p. 320, italics added.)

The *Flatley* court underscored the limited nature of its holding: "We emphasize that our conclusion that [the defendant's] communications constituted criminal extortion as a matter of law are based on the specific and extreme circumstances of this case. Extortion is the threat to accuse the victim of a crime or 'expose, or impute to him . . .

12

any deformity, disgrace or crime' (Pen. Code, § 519) accompanied by a demand for payment to prevent the accusation, exposure, or imputation from being made. Thus, our opinion should not be read to imply that rude, aggressive, or even belligerent prelitigation negotiations, whether verbal or written, that may include threats to file a lawsuit, *report criminal behavior to authorities* or publicize allegations of wrongdoing, necessarily constitute extortion. (*Philippine Export & Foreign Loan Guarantee Corp. v. Chuidian* [(1990)] 218 Cal.App.3d [1058,] 1079 ['a person, generally speaking, has a perfect right to prosecute a lawsuit in good faith, or to provide information to the newspapers'].) Nor is extortion committed by [a defendant] who threatens to report the illegal conduct of [a plaintiff] unless the [plaintiff] desists from that conduct. In short, our discussion of what extortion as a matter of law is limited to the specific facts of this case." (*Flatley*, *supra*, 39 Cal.4th at p. 332, fn. 16, italics added.)

Courts have interpreted the ruling in *Flatley* as carving out a very limited exception to section 425.16, applicable only when the party opposing the anti-SLAPP motion has established that there is no factual dispute between the parties regarding the criminal conduct. (See *Cross v. Cooper* (2011) 197 Cal.App.4th 357, 385-388; *Seltzer v. Barnes* (2010) 182 Cal.App.4th 953, 964-967.) The general rule is that "any 'claimed illegitimacy of the defendant's acts is an issue which the plaintiff must raise *and* support in the context of the discharge of the plaintiff's [secondary] burden to provide a prima facie showing of the merits of the plaintiff's case.' [Citation.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 94 (*Navellier*).)

In this case, defendants have not conceded that they engaged in illegal extortion, and there is nothing in the Letter, the parties' declarations, or other documentary evidence that conclusively establishes extortion. As relevant here, "[e]xtortion is the obtaining of property from another, with his consent . . . induced by a wrongful use of force or fear . . . ." (Pen. Code, § 518.) "Fear, for purposes of extortion 'may be induced by a threat, either: [¶] . . . [¶] 2. To accuse the individual threatened . . . of any crime; or, [¶] 3. To expose, or impute to him . . . any deformity, disgrace or crime[.]' (Pen. Code, § 519.) 'Every person who, with intent to extort any money or other property from another,

13

sends or delivers to any person any letter or other writing, whether subscribed or not, expressing or implying, or adapted to imply, any threat such as is specified in [Penal Code] Section 519, is punishable in the same manner as if such money or property were actually obtained by means of such threat.'  (Pen. Code, § 523.)"  (*Flatley*, *supra*, 39 Cal.4th at p. 326.)  "[G]uilt depends upon the intent of the person who makes the threat and not the effect the threat has on the victim (*People v. Fox*, *supra*, 157 Cal.App.2d at p. 430)."  (*People v. Umana* (2006) 138 Cal.App.4th 625, 641.)

Following *Flatley*, activity has been held illegal extortion as a matter of law only where there is an explicit demand for money or property, or the crime the defendants threaten to expose is unrelated to the subject litigation.  (See, e.g. *Cohen v. Brown* (2009) 173 Cal.App.4th 302, 317-318 [explicit threats to report attorney to the state bar and make his life a "living hell" unless attorney immediately signed off on a settlement check]; *Mendoza v. Hamzeh* (2013) 215 Cal.App.4th 799, 806 [explicit threat to report former employee to enforcement agencies and otherwise expose alleged crimes unless employee paid "damages exceeding $75,000"]; *Stenehjem v. Sareen, supra,* 226 Cal.App.4th at p. 1423 [threats to expose former employer to federal authorities for alleged violations of the False Claims Act which were "'entirely unrelated to any alleged injury suffered by' [employee]" unless employer negotiated a settlement of employee's defamation and wrongful termination claims].)

Here, there is no evidence that the prosecution threatened was related to the underlying dispute.  The letter solely concerned plaintiffs' interference with defendants' ownership of the Property.  Neither the Letter nor defendants' declarations conclusively establish defendants threatened prosecution if plaintiffs did not pay money or relinquish property rights.  The Letter threatened prosecution only if plaintiffs persisted in the criminal acts of "extorting, harassing, threatening, libeling, slandering James Burton, Ericka Burton and Riley Burton, as well as Debbie Montiero (aka Debbie Everage) and interfering with the contractors and workers at 3669 Kensley Dr. Inglewood, CA 90305." There was no demand that plaintiffs cease legal efforts to regain their property.  The Letter separately directed plaintiffs to cease making mortgage payments to Chase, with

14

the consequence that such payments would not be returned. There was no threat of criminal prosecution if mortgage payments were made. Moreover, defendants' declarations show that they did not believe plaintiffs *had* any property rights to relinquish. Instead, they believed plaintiffs' acts were aimed at *regaining* defendants' Property. There is no direct evidence of the specific intent necessary for extortion. Defendants met their burden under the first prong of the anti-SLAPP statute by making a prima facie showing that plaintiffs' extortion claim arose from their protected petitioning activity, which was not subject to the *Flatley* illegality exception.


### The Second Prong


To establish a probability of prevailing on a claim under the second prong, the plaintiff responding to an anti-SLAPP motion "'must demonstrate that the complaint is both legally sufficient and supported by a sufficient prima facie showing of facts to sustain a favorable judgment if the evidence submitted by the plaintiff is credited.' [Citations.] In deciding the question of potential merit, the trial court considers the pleadings and evidentiary submissions of both the plaintiff and the defendant (§ 425.16, subd. (b)(2)); though the court does not *weigh* the credibility or comparative probative strength of competing evidence, it should grant the motion if, as a matter of law, the defendant's evidence supporting the motion defeats the plaintiff's attempt to establish evidentiary support for the claim. [Citation.]" (*Wilson v. Parker, Covert & Chidester* (2002) 28 Cal.4th 811, 821, superseded by statute on another point as stated in *Hutton v. Hafif* (2007) 150 Cal.App.4th 527, 547-550.) Because the anti-SLAPP statute (1) allows early intervention in lawsuits alleging unmeritorious causes of action that implicate free speech and petition concerns, and (2) limits the opportunity to engage in discovery, a plaintiff's burden of establishing a probability of prevailing is not high. We accept as true all evidence favoring the plaintiff, and consider the defendant's evidence only to ascertain whether it defeats the plaintiff's submission as a matter of law. (*Overstock.com, Inc. v. Gradient Analytics, Inc.* (2007) 151 Cal.App.4th 688, 699-700; *Ampex Corp. v.*

15

*Cargle* (2005) 128 Cal.App.4th 1569, 1576.) Only a cause of action lacking "even minimal merit" constitutes a SLAPP. (*Navellier*, *supra*, 29 Cal.4th at p. 89.)

Defendants contend that the litigation privilege of Civil Code section 47, subdivision (b) applies to the Letter, barring plaintiffs from establishing a probability of prevailing on their extortion claim. Section 47, subdivision (b) provides an absolute privilege for a publication or broadcast made in any legislative, judicial, or other official proceeding authorized by law. (*Albertson v. Raboff* (1956) 46 Cal.2d 375, 379.) The litigation privilege is not limited to communications to or from governmental officials. It applies to communications preliminary to a proposed judicial proceeding, such as a demand letter from an attorney to a potential adversary. (*Lerette v. Dean Witter Organization, Inc.* (1976) 60 Cal.App.3d 573, 577.) "The litigation privilege is absolute; it applies, if at all, regardless whether the communication was made with malice or the intent to harm. [Citation.] . . . [A]pplication of the privilege does not depend on the publisher's 'motives, morals, ethics or intent.' [Citation.]" (*Kashian v. Harriman* (2002) 98 Cal.App.4th 892, 913 (*Kashian*).)

"To be protected by the litigation privilege, a communication must be 'in furtherance of the objects of the litigation.' [Citation.] . . . A prelitigation communication is privileged only when it relates to litigation that is contemplated in good faith and under serious consideration. [Citations.] [¶] The policy supporting the litigation privilege is furthered only if litigation is seriously considered . . . 'No public policy supports extending a privilege to persons who attempt to profit from hollow threats of litigation.' [Citations.] [¶] Whether a prelitigation communication relates to litigation that is contemplated in good faith and under serious consideration is an issue of fact." (*Action Apartment Ass'n, Inc. v. City of Santa Monica* (2007) 41 Cal.4th 1232, 1251 (*Action Apartment*).) The applicability of the litigation privilege is a question of law where there is no dispute regarding the operative facts. (*Kashian*, *supra*, 98 Cal.App.4th at p. 913.)

"The litigation privilege is . . . relevant to the second step in the anti-SLAPP analysis in that it may present a substantive defense a plaintiff must overcome to

16

demonstrate a probability of prevailing. (See, e.g., *Kashian*[, *supra*,] 98 Cal.App.4th [at pp.] 926-927 [Where plaintiff's defamation action was barred by Civil Code section 47, subdivision (b), plaintiff cannot demonstrate a probability of prevailing under the anti-SLAPP statute]; *Dove Audio, Inc. v. Rosenfeld, Meyer & Susman* (1996) 47 Cal.App.4th 777, 783-785 [Defendant's prelitigation communication was privileged and trial court therefore did not err in granting motion to strike under the anti-SLAPP statute].)" (*Flatley*, *supra*, 39 Cal.4th at p. 323.)

Plaintiffs argue that the Letter was not made judicially or in an administrative proceeding or as part of a necessary prelitigation conference, meeting or other communication. Instead, they argue the Letter had the sole, unprivileged purpose of threatening plaintiffs in an attempt to make them surrender their claims to the Property. Given the low burden of proof, plaintiffs' argument is well-taken.

Defendants' success in the first prong of the anti-SLAPP analysis does not dictate the results of the second prong. Although defendants were able to establish the letter was not illegal extortion as *a matter of law*, this showing does not rule out all reasonable probability that the Letter was extortionate, it merely establishes that defendants did not concede extortion and the evidence of extortion was not conclusive. There are unresolved factual issues regarding the quitclaim deed and ownership of the Property, and the circumstances of the case leave room for the possibility that defendants did, in fact, intend for the threat of criminal prosecution to force plaintiffs to abandon their legal remedies for regaining the Property, in effect causing them to relinquish it.

Likewise, defendants' prima facie showing that the Letter was prelitigation activity deserving of anti-SLAPP protection does not foreclose the possibility that the Letter was not made in anticipation of litigation "contemplated in good faith and under serious consideration." Although they declared that they had retained counsel prior to writing the Letter, James Burton did not employ counsel to write the Letter, but instead wrote it himself. The Letter did not allude to civil litigation of any sort. It was Berryhill's response that threatened civil litigation, and plaintiffs brought the lawsuit. It is arguable that defendants were not seriously considering litigation at the time James

17

Burton wrote the letter, but instead attempting to extort plaintiffs by frightening them with the threat of criminal prosecution.

We conclude there are triable issues of fact regarding whether "'imminent litigation was seriously proposed and actually contemplated in good faith as a means of resolving the dispute . . . .'" and whether defendants engaged in civil extortion. (*Action Apartment*, *supra*, 41 Cal.4th at p. 1251.) Defendants did not defeat plaintiffs' prima facie showing of a probability that they will prevail on their extortion claim by invoking the litigation privilege.

### Attorney Fees

Section 425.16, subdivision (c) provides that where "a special motion to strike is frivolous or is solely intended to cause unnecessary delay, the court shall award costs and reasonable attorney's fees to a plaintiff prevailing on the motion, pursuant to Section 128.5." A special motion to strike is frivolous if "'any reasonable attorney would agree such motion is totally devoid of merit.' [Citation.]" (*Decker v. U.D. Registry, Inc*. (2003) 105 Cal.App.4th 1382, 1392, superseded by statute on other grounds, as stated in *Hall v. Time Warner, Inc.* (2007) 153 Cal.App.4th 1337, 1349.)

We cannot conclude that defendants' special motion to strike was totally devoid of merit. Plaintiffs argue that an award of fees is supported because the Letter is extortion as a matter of law, and because defendants cannot succeed under the first prong of the anti-SLAPP analysis. They have not prevailed on either of these issues, and do not claim that the motion was made to cause undue delay. There is no basis for an award of costs and fees under the circumstances of this case.

18

## DISPOSITION

The order denying defendants James and Erika Burton's anti-SLAPP motion is affirmed. Costs on appeal are awarded in favor of plaintiffs Irene Berryhill and Aneka Braxton.


KRIEGLER, J.


We concur:


MOSK, Acting P. J.


BAKER, J.